S02A0874, S02X0876. GWINNETT COUNTY et al. v. BLANEY; and vice versa.
(572 SE2d 553)

HINES, Justice.

This is an appeal and cross-appeal from rulings by the Superior Court of Gwinnett County on petitions for mandamus and for declaratory judgment filed by Gerald N. Blaney, Jr., in his official capacity as Solicitor-General of Gwinnett County; the petitions involve questions of Blaney's entitlement to a legal defense under a county indemnification plan adopted pursuant to OCGA § 45-9-21, and any obligation of Gwinnett County to pay fees for privately-retained counsel representing Blaney in a federal sexual discrimination lawsuit filed by a former employee. For the reasons which follow, we reverse in the main appeal and affirm in the cross-appeal.

Pursuant to OCGA § 45-9-21, Gwinnett County enacted an ordi-

nance to establish an "Officer and Employee Defense and Indemnification Plan" ("Plan") to defend specified civil, criminal, or quasi-criminal actions brought or maintained against supervisors, administrators, employees, or other elected or appointed officers, arising out of the performance of their official duties.[1] Section 8 of the Plan, which provides for the exclusion of coverage and grounds for refusal of a defense and termination of coverage states:

> (a) The county may refuse to provide for the defense of a claim or proceeding brought against any Plan Member if the County Attorney determines that:
> (i) the act of omission did not arise out of and in the course of the Plan Member's employment by the County;
> (ii) the Plan Member acted or failed to act because of actual or intentional misconduct, fraud, corruption, malice or in bad faith;
> (iii) the proceeding against the Plan Member is a criminal prosecution;
> (iv) the County is a plaintiff in the claim or proceeding brought against the Plan Member;
> (v) the claim or proceeding against the Plan Member arises out of such Plan Member's intentional or knowing violation of a written policy of the Commission, a Department of the County Government, and/or the County Manager, where applicable;
> (vi) the Plan Member acts or fails to act as a result of impaired judgment caused by the voluntary consumption of alcohol or by the voluntary illegal use of any controlled substance as defined by the laws of the State of Georgia[;]
> (vii) the Plan Member acts or fails to act contrary to the advice of the County Attorney or the Risk Manager, except in an emergency situation or upon the existence of extenuating circumstances;
> (viii) the Plan Member acts or fails to act in willful disregard of County policy, where applicable, or the specific instructions of the Plan Member's superiors;
> (ix) the Plan Member fails to comply with any notice or cooperation requirement of Section 6 above;[2] or
> (x) the defense of any such claim or proceeding by the

---

[1] Pursuant to OCGA § 45-9-22, the Plan also provided for the payment of part or all of any claim or civil judgment rendered against any person whose defense Gwinnett County was authorized to undertake in accordance with the ordinance.

[2] Section 6 provides for requirements of notice of the occurrence, claim, or suit and cooperation of the Plan Member in order to be entitled to coverage under the Plan.

County may create a conflict of interest between the County and the Plan Member.

On May 8, 1998, Blaney, individually and in his official capacity as Solicitor-General, and Gwinnett County were sued by an employee under the Family Medical Leave Act ("FMLA") in the United States District Court for the Northern District of Georgia. Pursuant to the Plan, the county defended and indemnified Blaney in the lawsuit, and the case was eventually settled with the county providing the settlement funds.

On June 1, 1998, Worton, another employee in the Solicitor-General's office complained to the Human Resources Department about Blaney's suggestive language and conduct. A week later, Worton hand delivered to Blaney a copy of a letter she had prepared, as well as one addressed to Human Resources, detailing her complaints against Blaney.[3] Blaney required Worton to make copies of the letter and pass it out to all 35 employees in the Solicitor-General's office. On June 8, 1998, the Chairman of the Gwinnett County Board of Commissioners sent Blaney a letter stating a need to speak with Blaney about recent allegations of improper behavior and the county's position regarding potential legal liability arising from such behavior.

Also, the Human Resources Department received two anonymous letters complaining of Blaney's ongoing personal relationship with Gallamore, a subordinate in Blaney's office; the letters noted the adverse and negative effect Blaney's conduct was having on the Solicitor's office. Blaney received a June 8, 1998 memorandum from the Director of the Human Resources Department concerning the allegations made by Worton and those in the two anonymous letters.

Blaney also received and read a June 8, 1998 letter from the then-acting county attorney, Thomas, advising Blaney about the terms and conditions of the Plan and directing him to the behavior specified in the Plan which would exclude coverage. This letter further stated that the Law Department was aware of the Worton matter and the two anonymous letters.[4] It then reminded Blaney about

---

[3] Worton's allegations regarding Blaney included: Blaney used profanity at work, especially the word "f__k"; on more than one occasion, Blaney told Worton that she had "no boobs or no butt"; on one occasion in January or February of 1998, Blaney told Worton that he knew his wife had called Worton at home seeking the telephone number of another employee, which Worton provided, and Blaney told Worton that his personal life was his business; on more than one occasion between April 2, 1998 and the end of May 1998, Blaney commented that due to Worton's back surgery, she would have no sex life; in late May 1998, Worton requested to leave work early because her teenage daughter and friends were home swimming and there were painters at the house, and Blaney responded that Worton needed to go home because he would be concerned that her daughter and friends were having sex; Blaney had touched Worton's back and asked to see the scar from her back surgery.

[4] It advised of "one signed written complaint from a member of your staff alleging facts

the prohibitions of county policy and the employee protections afforded under the Gwinnett County Merit System; it ended by advising Blaney that certain adverse acts by him would result in his loss of legal coverage under the Plan and that "any act by you which is willfully contrary to the County's Human Resources or County Administrator Policies, the County's Merit Rules, County Attorney advice or other willful policy violation may result in the denial of coverage to you under the Plan."

On June 19, 1998, Blaney met with the Director and Assistant Director of the Human Resources Department and Blaney denied having an ongoing relationship with subordinate Gallamore. When asked specifically whether he was having an affair with a subordinate, Blaney responded, "[W]hat if I am," "You'd tell me that I was an idiot," and "I would not expect to be represented by the County if I did something that stupid." Approximately 40 minutes after this initial meeting ended, Blaney returned to meet with the two men, this time with Gallamore. At this second meeting, Blaney admitted the affair and both he and Gallamore stated that they had no intention of terminating their relationship.

Acting county attorney Thomas wrote Blaney a second letter on June 23, 1998, referencing the June 8, 1998 letter and its contents and further stating,

> Since that time, it has come to my attention that you have admitted to maintaining and continuing to maintain an inappropriate personal relationship with a subordinate. You have been warned by the County's Human Resources Director that such a relationship is contrary to County policy and you have admitted the fact that this relationship has had and is having an adverse effect on your staff. You have been reminded that this relationship and associated personal conduct may subject you and the County to liability under state and federal employment law and other authority. You have not, however, taken the necessary steps to correct this situation. In addition, the failure on your part to resolve the complaints of other employees continues to subject the County to liability for retaliation, emotional distress, and other claims which may arise from your actions.

which, if true, may constitute sexual harassment, retaliation, intentional infliction of emotional distress or otherwise may violate state or federal law and/or the County's Merit Rules or County Administrator policies," and added, "[w]e have also been made aware of two anonymous letters which may state a claim for sexual harassment or other violation of the County's Merit Rules."

Thomas concluded that under the outlined circumstances, it was her opinion that Blaney had intentionally, knowingly, and willfully violated and continued to violate county policy and Thomas's advice as county attorney. Thomas stated that accordingly, Blaney was not entitled to coverage under the Plan "for any claim of retaliation, discrimination or any similar allegation of unfair employment practices under federal or state law or merit system regulations asserted from June 9, 1998 forward" by Worton, Gallamore, or any other employee of the Solicitor-General's office, Gwinnett County, or the office of any other independent elected official or constitutional officer.[5] The letter ended with the statement that there was a "complete withdrawal of coverage" for the outlined claims, and that in the event that Blaney was served with a grievance or complaint making any of the outlined claims, it would be Blaney's obligation to obtain counsel at his own expense; the county would not satisfy any judgment against Blaney or pay any settlement to which Blaney might consent. Blaney went to see the county attorney, but only to question who had made the decision that he would not be covered under the Plan.

On June 9, 1999, Worton and her husband filed a 12-count complaint against Gwinnett County and Blaney, individually, and in his capacity as Solicitor in the United States District Court for the Northern District of Georgia. The suit alleged, inter alia, Blaney's violations of 42 USC § 1983 by sexual discrimination, harassment, and retaliation. On June 28, 1999, Blaney wrote a letter to the Gwinnett County Board of Commissioners regarding several personnel and litigation matters, and in the letter he requested coverage under the Plan for the *Worton* suit. The following day, the county attorney responded by letter that the Board would not be able to meet and act upon Blaney's request for Plan coverage prior to the date that Blaney had indicated an answer in the *Worton* suit was due; the letter reiterated the county's position that Blaney was not eligible for defense and/or indemnification in the *Worton* litigation. Blaney retained private counsel. At some point in the representation, Blaney attempted to hire his retained attorney for a position in the Solicitor-General's office, so that the attorney might work on Blaney's defense in the *Worton* suit, but the attorney refused.

From July 1999 until May 2000, Blaney submitted check requests in the amount of $14,146.11 to Gwinnett County's Financial Services Department for the payment of his attorney fees and other litigation expenses related to the *Worton* suit; Blaney directed that

---

[5] The letter also specifically referred to the FMLA suit and stated that Blaney would not be provided a defense or indemnification for his acts which might become the subject of any amendment to the complaint or any new complaint related to any occurrence, or arising out of any act subsequent to the filing of the original FMLA complaint.

the invoices be paid from a line item of his office budget and the invoices were paid in full. In June 2000, Blaney submitted another check request to the Financial Services Department for the payment of a $16,865.89 invoice from his attorney; the Financial Services Department then discovered that Blaney had directed the payment of his attorney fees in the *Worton* case from his departmental budget and refused to pay the submitted $16,865.89 bill. The financial services director wrote Blaney reminding him that he had been informed in writing by the county attorney that Blaney would have to retain counsel for the *Worton* suit at his own expense, and demanding that Blaney repay the $13,602.51 in unauthorized attorney fees previously paid by the county.

On February 9, 2001, Blaney, in his official capacity, filed a petition for writ of mandamus against Gwinnett County and the Gwinnett County Board of Commissioners seeking payment of his attorney fees and legal expenses incurred in defense of the *Worton* lawsuit, as well as attorney fees and expenses for the mandamus action. On February 23, 2001, the defendants filed a counterclaim seeking reimbursement of the attorney fees and expenses already paid for Blaney's legal defense in the *Worton* case. Blaney filed an amendment to his mandamus petition on March 15, 2001, to add a petition for declaratory judgment, asking that if the court did not grant his requested writ of mandamus, it declare him to be entitled under the Plan to the payment of his attorney fees in the *Worton* lawsuit.

The superior court held an evidentiary hearing on the mandamus petition on March 15, 2001, at which time Blaney limited his request for mandamus relief to the sole issue of the payment of his $16,865.89 attorney fees bill from the Solicitor-General's office budget. The superior court on March 28, 2001, entered an order denying Blaney's petition for writ of mandamus, finding that the request for the expenditure of county funds from the Solicitor-General's budget to pay for Blaney's attorney fees and expenses was not authorized or appropriate.[6]

On November 28, 2001, the superior court entered a separate order on Blaney's petition for declaratory judgment.[7] The court determined that in a declaratory judgment action, it was not authorized to direct the county to provide coverage to Blaney under the Plan, that it might only declare the rights of the parties. It then found that Bla-

---

[6] At the mandamus hearing, Blaney testified that he requested additional sums for his office account in order to pay for his legal costs in the *Worton* litigation and "future lawsuits," but that he did not disclose that the monies were for his *Worton* defense because he did not want to have the funds disapproved.

[7] On December 10, 2001, the County dismissed without prejudice its counterclaim against Blaney for amounts already expended.

ney was an elected official whom the plan was designed to protect, but that Blaney's entitlement to a defense under the Plan was not absolute – the county might deny coverage to Blaney if it correctly determined that Blaney violated county policy and that such violation gave rise to the claim against Blaney. However, the court concluded that the county excluded Blaney from coverage under the Plan for claims made against him in the *Worton* lawsuit based on the fact that Blaney had an ongoing relationship with a different employee after having been instructed by the county that such was a violation of county policy, that the claims made in the *Worton* lawsuit and Blaney's relationship with the other employee were unrelated,[8] and consequently, that under the facts of the case, the county was obligated to defend Blaney in the *Worton* lawsuit under the Plan.[9]

Case No. S02A0874 is the appeal by Gwinnett County and its Board of Commissioners ("Gwinnett County") from the November 28, 2001 order on the declaratory judgment. Case No. S02X0876 is Blaney's cross-appeal from the March 28, 2001 denial of his petition for mandamus.[10]

## *Case No. S02A0874*

1. Gwinnett County contends that the superior court erred in failing to dismiss the declaratory judgment action because it is not the appropriate vehicle to review the discretionary decision of a public official, in this case, that of the county attorney. We agree that Blaney's petition for declaratory judgment was not authorized.

Certainly, pursuant to OCGA § 45-9-21, the county governing authority is empowered to undertake to defend its employees and its elected or appointed officers in litigation arising out of the performance of their duties, as has been done here by the adoption of the defense and indemnification plan. *Stephenson v. Bd. of Commrs. of Cobb County*, 261 Ga. 399, 401 (3) (405 SE2d 488) (1991). The offering of the Plan is in the nature of an employee benefit. *Hendon v. DeKalb County,* 203 Ga. App. 750, 755 (1) (417 SE2d 705) (1992), citing *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34, 36 (413

---

[8] At the hearing on March 15, 2001, Blaney acknowledged that having a sexual relationship with a subordinate female employee in his office "would be unlikely not to" have an adverse effect on his office, and admitted that he had earlier stated that he knew it could have such a consequence.

[9] The parties have stipulated that the District Court dismissed the *Worton* suit on March 5, 2001.

[10] On December 28, 2001, Gwinnett County filed a notice of appeal to the Court of Appeals from the November 28, 2001 order on the declaratory judgment. Blaney then filed a notice of cross-appeal to the Court of Appeals from the March 28, 2001 order denying his petition for writ of mandamus. The Court of Appeals transferred the appeal and cross-appeal to this Court on February 26, 2002.

SE2d 718) (1992). And in certain circumstances, a declaration of rights in regard to an employee benefit may properly be brought as a declaratory judgment action. See *Dunlap v. City of Atlanta*, 272 Ga. 523 (531 SE2d 702) (2000). However, that is not dispositive with regard to the propriety of the present petition for declaratory relief.

> The Declaratory Judgment Act provides a means by which a superior court "simply declares the rights of the parties or expresses [its] opinion . . . on a question of law, without ordering anything to be done. . . ." [Cit.] The purpose of the Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." OCGA § 9-4-1. The superior court is authorized to enter a declaratory judgment upon petition therefor in cases of actual controversy (OCGA § 9-4-2 (a)), and "to determine and settle by declaration any justiciable controversy of a civil nature where it appears to the court that the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations." [Cit.]

*Baker v. City of Marietta*, 271 Ga. 210, 213 (1) (518 SE2d 879) (1999). The very purpose of the declaratory judgment is to permit the determination of a controversy *before* obligations are repudiated or rights are violated. *Dean v. City of Jesup,* 249 Ga. App. 623, 624 (1) (549 SE2d 466) (2001).

Here, after the county attorney indicated to Blaney that expenses for his legal defense in any suit filed by Worton would not be covered under the Plan, Blaney made no request for a hearing in the matter or any formal review, administrative or otherwise, of the adverse decision.[11] Nor did he then institute any legal proceeding to attempt to secure more immediate relief. Instead, he retained counsel of his own choosing and expended funds, including those of Gwinnett County, to pay for the representation and the attendant costs. It was only after the expenses were incurred and Gwinnett County refused payment of the remainder of the fees and requested reimbursement of the monies it had already paid that Blaney sought a declaration of his rights under the Plan. What is more, at the time the superior court addressed the petition for declaratory judgment, it had already determined that Blaney was not entitled to the relief

---

[11] Blaney's only administrative action was his letter request to the Board of Commissioners to consider his coverage under the Plan, after the *Worton* litigation was underway.

requested in his petition for writ of mandamus, that is, that Gwinnett County, as a budgetary matter, did not have to pay the additional $16,865.89 for attorney fees incurred by Blaney in the *Worton* suit from funds budgeted for the Office of the Solicitor-General. Thus, no actual controversy existed which would authorize the declaratory judgment.

But determining whether an "actual controversy" exists does not end the inquiry of the propriety of the declaratory judgment because

> [s]ubsection (b) of OCGA § 9-4-2 broadens the scope of the Declaratory Judgment Act beyond actual controversies to include "justiciable controversies." [Cit.] That leaves the question whether there was a "justiciable controversy" which would authorize the trial court to enter a declaratory judgment under § 9-4-2 (b). A declaratory judgment is authorized when there are "circumstances showing [a] necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some *future* act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest. . . ." [Cit.] Where the party seeking declaratory judgment does not show that it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper ([cit.]); otherwise the trial court will be issuing an advisory opinion, and the Declaratory Judgment Act makes no provision for a judgment that would be "advisory." [Cit.] Where the rights of the parties have already accrued and the party seeking the declaratory judgment does not risk taking future undirected action, a declaratory judgment would be "advisory." [Cit.] . . . "Declaratory judgment will not be rendered based on a possible or probable [future] contingency. [Cit.]" [Cit.]

(Emphasis supplied.) *Baker v. City of Marietta*, supra at 214 (1). Again, here the legal expenses have already been incurred. And a finding regarding Plan coverage for Blaney in the *Worton* suit would not portend, much less determine, any questions of Blaney's coverage under the Plan in any future legal actions instituted against him. Compare *Gwinnett County v. Yates*, 265 Ga. 504 (458 SE2d 791) (1995). Thus, there was not a justiciable controversy which would authorize the superior court's entry of a declaratory judgment pursuant to OCGA § 9-4-2 (b).

2. Our decision in Division 1 makes it unnecessary to address Gwinnett County's remaining challenges to the superior court's

declaratory judgment.

### Case No. S02X0876

3. Blaney challenges the denial of his petition for writ of mandamus seeking that Gwinnett County be ordered to pay for his privately-retained counsel in the *Worton* action from his office budget. But, "[t]he extraordinary writ of mandamus will not lie unless the petitioner seeking it has a clear legal right to have the act performed. *Lansford v. Cook*, 252 Ga. 414, 415 (314 SE2d 103) (1984). 'The law must not only authorize the act be done, but must require its performance.' Id." *Cleveland v. Skandalakis*, 268 Ga. 133, 134 (485 SE2d 777) (1997). That is not the case here.

Citing *Griffies v. Coweta County*, 272 Ga. 506 (530 SE2d 718) (2000), Blaney argues that Gwinnett County has no authority to disapprove expenditures of elected officials once a budget is approved, and therefore is required to pay Blaney's legal defense in the *Worton* litigation. However, *Griffies* is inapposite to the circumstances of this case.

In *Griffies*, the clerk of the superior court obtained bottled water for her employees to drink and submitted the water bills totaling $363.89 for payment out of the miscellaneous line item of her budget. The county commissioners instructed the finance director not to pay the bills after concluding that the courthouse water was safe, and therefore, that the bottled water was not an expenditure necessary for the operation of Griffies' office. Griffies brought a mandamus action seeking payment from the county for the bottled water. This Court held that "a county commission does not, by itself, have the authority to disapprove expenditures for a county officer once that officer's budget has been approved by the commission." Id. at 508 (1). However, in determining the propriety of the trial court's ruling that the expense for the bottled water was inappropriate, this Court made plain that while the county officer, after the county commission has established the officer's budget, has the discretion to expend money designated in the miscellaneous line item of the budget, such expenditure must be " 'within the sphere of [the officer's] legally delegated powers.'" Id. at 509 (1), citing *Bd. of Commrs. of Fulton County v. 1991 Tax Digest for Fulton County*, 261 Ga. 702, 703 (410 SE2d 721) (1991); *Whatley v. Taylor County*, 224 Ga. 669, 670 (164 SE2d 121) (1968). But Blaney has not shown that he had either the express, implicit, or inherent power as Solicitor to employ counsel with county funds to represent himself in the *Worton* litigation. See OCGA § 15-18-66; *Stephenson v. Bd. of Commissioners of Cobb County,* supra at 400 (3). In fact, the circumstances compel the contrary conclusion.

Blaney employed his own counsel in the *Worton* matter with

county funds in lieu of coverage under the Plan. The purpose of the Plan is to indemnify governmental employees or officers against *personal* liability for damages arising out of the performance of their duties. *Hendon v. DeKalb County,* supra at 754 (1). This is in recognition that a suit against an officer or agent of the State, in his or her official capacity, is really a suit against the State. *Cameron v. Lang,* 274 Ga. 122, 126 (3) (549 SE2d 341) (2001); *Hennessy v. Webb,* 245 Ga. 329, 330 (264 SE2d 878) (1980).

4. Blaney further fails in his contention that *Boswell v. Bramlett,* 274 Ga. 50 (549 SE2d 100) (2001), and *Yates v. Gwinnett County,* supra, require that Gwinnett County pay his *Worton* bills. Those cases hold that when an official, acting in his or her official capacity, is required to hire outside counsel to assert a legal position that the local government attorney cannot because of a conflict in representing the local government or will not assert, and the official is successful in asserting his or her position, the local government must pay the official's attorney fees. *Boswell,* supra at 52 (3); *Yates,* supra at 508 (2). Even though in the *Worton* case, Blaney was sued both in his individual capacity and his official capacity, the reality is that Blaney's fees were incurred in his personal defense, i.e., in his individual capacity and not in his official capacity, because Gwinnett County was represented by its own counsel in the litigation. What is more, there is no evidence that had Blaney not been found to forfeit coverage under the Plan that the local government attorney would have had a conflict of interest in representing both Blaney and Gwinnett County in the *Worton* action.

Blaney's petition for writ of mandamus regarding the payment of his attorney fees and costs was properly denied.[12]

*Judgment reversed in Case No. S02A0874. Judgment affirmed in Case No. S02X0876. All the Justices concur.*

DECIDED NOVEMBER 12, 2002.

*Carothers & Mitchell, Richard A. Carothers, Thomas M. Mitchell, John H. Zwald,* for appellants.

*Davidson, Fuller & Sloan, Stephen P. Fuller,* for appellee.

---

[12] In argument, Blaney further complains that the trial court erred in not ordering Gwinnett County to pay for his attorney fees for having to bring this litigation. However, the request for mandamus relief was limited to the issue of the payment of the bill for fees in the *Worton* suit, and in the mandamus order, the trial court made no ruling with regard to other fees incurred by Blaney.