317 Ga. 232
FINAL COPY

S23A0699.  KUHLMAN v. THE STATE.

ELLINGTON, Justice.

After the Georgia Board of Public Safety ("the Board") denied Rick Allen Kuhlman's application for relief from the prohibition on the possession of firearms by convicted felons in OCGA § 16-11-131, Kuhlman sued the State of Georgia in the Superior Court of Fulton County, seeking a declaratory judgment "that he qualifies for relief" from that prohibition pursuant to subsection (d) of the statute. His complaint, as amended, also included claims that the statute, as applied to him, violated his right to bear arms under the Second Amendment to the United States Constitution and Article I, Section I, Paragraph VIII of the Georgia Constitution of 1983. The superior court granted summary judgment to the State on all claims. In its order, the court ruled that Kuhlman's statutory claim was barred by sovereign immunity, that he could not maintain his federal constitutional claim, and that OCGA § 16-11-131 did not violate the

state Constitution. Nevertheless, the superior court went on to rule in the alternative on the merits of Kuhlman's statutory claim, but it failed to reach the merits of his federal constitutional claim. For the reasons set forth below, we reverse the portion of the superior court's judgment that is based on sovereign immunity, we affirm the court's alternative ruling on the merits of Kuhlman's statutory claim, we vacate the portion of the judgment that relates to Kuhlman's constitutional claims, and we remand the case to the superior court for reconsideration of Kuhlman's constitutional claims consistent with this opinion.

1. In 2011, Kuhlman pled guilty in federal court to one count of health care fraud under 18 USC § 1347. In 2014, he was sentenced to 30 months in prison followed by three years of extended supervision that was terminated early in February 2019. In 2021, Kuhlman applied to the Board for relief pursuant to subsection (d) of OCGA § 16-11-131. Under that subsection, a person who has been convicted of a "felony pertaining to antitrust violations, unfair trade practices, or restraint of trade" may apply to the Board for "relief

2

from the disabilities imposed by this Code section." OCGA § 16-11-131 (d).[1] See also *Ferguson v. Perry*, 292 Ga. 666, 673 (2) (c) (740 SE2d 598) (2013) (recognizing that "when a citizen is precluded by law from possessing firearms as a consequence of his felony conviction, he suffers a 'disability imposed by law,'" that "the Georgia statutes that prohibit convicted felons . . . from possessing firearms . . . are disabilities imposed by state law," and that "in OCGA § 16-11-131 the General Assembly described statutory prohibitions against possessing firearms in just these terms"). The Board denied Kuhlman's application, "determin[ing] that [his] application for [relief from] [d]isabilities pursuant to OCGA § 16-11-

---

[1] More fully, the relevant part of OCGA § 16-11-131 (d) provides:
A person who has been convicted under federal or state law of a felony pertaining to antitrust violations, unfair trade practices, or restraint of trade shall, upon presenting to the Board of Public Safety proof, and it being established from said proof, submitted by the applicant to the satisfaction of the Board of Public Safety that the circumstances regarding the conviction and the applicant's record and reputation are such that the acquisition, receipt, transfer, shipment, or possession of firearms by the person would not present a threat to the safety of the citizens of Georgia and that the granting of the relief sought would not be contrary to the public interest, be granted relief from the disabilities imposed by this Code section.

131 does not qualify for the relief sought."

A week later, Kuhlman filed his action for declaratory relief, seeking a declaration that his "conviction pertained to antitrust violations, unfair trade practices, or restraint of trade and therefore qualifies for relief under OCGA § 16-11-131 (d)." The superior court denied the State's motion to dismiss Kuhlman's complaint, and Kuhlman amended his complaint to also seek declarations that "OCGA § 16-11-131 is unconstitutional as applied to him to the extent it prohibits his possession of firearms," under both the Second Amendment to the United States Constitution and Article I, Section I, Paragraph VIII of the Georgia Constitution of 1983.

In its order granting the State's motion for summary judgment, the superior court ruled that "[s]overeign immunity bars [Kuhlman's] claim for a declaration as to the nature of his conviction"; that "[e]ven if not barred by sovereign immunity, [Kuhlman] is not entitled to a declaration that his conviction qualifies for relief pursuant to OCGA § 16-11-131 (d)"; that Kuhlman's "federal claim cannot be maintained because the State of

4

Georgia is not a person for purposes of 42 USC § 1983"; and that "OCGA § 16-11-131 does not violate the Georgia Constitution." This Court granted Kuhlman's application for discretionary appeal to consider whether the superior court erred when it ruled that, because "[f]ederal constitutional claims, whether in federal or state courts, are necessarily brought pursuant to 42 USC § 1983" and a state is not a "person" subject to suit under that statute, Kuhlman "cannot maintain his federal constitutional claim against the State of Georgia."

2. We turn first to Kuhlman's contention that the superior court erred by ruling that sovereign immunity barred his statutory claim.[2] Article I, Section II, Paragraph V (b) (1) of the Georgia

---

[2] Although our order granting Kuhlman's application for discretionary appeal identified only one specific claim of error with which we were "particularly concerned," we did not direct the parties to file briefs on that issue only and, therefore, "we have not limited the scope of the discretionary review more narrowly than the enumeration of errors in the application." *Zekser v. Zekser*, 293 Ga. 366, 369 (2) n.14 (744 SE2d 698) (2013) ("When we do limit the scope of review more narrowly, we do so explicitly."). We first address sovereign immunity because its applicability "is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred." *McConnell v. Dept. of Labor*, 302 Ga. 18, 19 (805 SE2d 79) (2017) (footnote omitted). See also *Polo*

5

Constitution of 1983 waives sovereign immunity for certain actions seeking declaratory relief for alleged "acts" of state boards (as well as many other types of governmental entities, officials, and employees) that are "outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States."[3] In this case, Kuhlman claims

---

*Golf & Country Club Homeowners Assn. v. Cunard*, 306 Ga. 788, 790 (1) (a) (833 SE2d 505) (2019) ("Sovereign immunity . . . must be ruled upon *prior* to the case moving forward on the more substantive matters." (emphasis in original)). Indeed, the superior court properly addressed sovereign immunity first and then proceeded to make an alternative ruling on the merits of Kuhlman's statutory claim. See *Dept. of Labor v. McConnell*, 305 Ga. 812 (828 SE2d 352) (2019) (affirming the Court of Appeals' holdings on remand that the trial court erred in dismissing the case on sovereign immunity grounds but that the trial court correctly ruled in the alternative that the complaint failed to state a claim).

[3] In full, subparagraph (b) (1) provides:

Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

6

that the Board's "act" of denying his application for relief under OCGA § 16-11-131 (d) was "in violation of" the following: the laws of this State — OCGA § 16-11-131 (d); the Constitution of this State — Article I, Section I, Paragraph VIII; and the Constitution of the United States — the Second Amendment. The first of these claims seeks a declaration that the Board's decision that Kuhlman failed to qualify for relief was contrary to the law, specifically that his felony conviction pertained to "antitrust violations, unfair trade practices, or restraint of trade" and consequently qualifies for relief under OCGA § 16-11-131 (d).[4] For this reason, Kuhlman's statutory claim is a claim that the Board's act of denying his application was "in

---

Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (1). Subparagraph V (b) (2) of Article I, Section II specifies that actions covered by this subparagraph and based on acts of the State, state boards, or several other types of state entities, officers, or employees "shall be brought exclusively against the state and in the name of the State of Georgia."

[4] We recognize that such a declaration, standing alone, would not entitle Kuhlman to relief under the statute. The Board still would have to be satisfied from proof submitted by Kuhlman that under the circumstances, his "acquisition, receipt, transfer, shipment, or possession of firearms . . . would not present a threat to the safety of the citizens of Georgia and that the granting of the relief sought would not be contrary to the public interest." OCGA § 16-11-131 (d). But if Kuhlman's first request for declaratory relief were granted, it would show that he has satisfied one of the criteria for obtaining relief from the Board under the operative statutory provision.

7

violation of the laws . . . of this state," and that claim therefore comes within the constitutional waiver of sovereign immunity in Article I, Section II, Paragraph V (b) (1).[5] Accordingly, the portion of the superior court's judgment based on sovereign immunity must be reversed.

3. Having made the necessary threshold determination that sovereign immunity does not bar Kuhlman's statutory claim, we next consider the superior court's ruling on the merits of that claim.[6]

---

[5] No party disputes, and we agree, that the federal and state constitutional violations Kuhlman alleges come within this constitutional waiver of sovereign immunity. As the superior court recognized in that regard, "the above waiver of immunity applies to [Kuhlman's] request for declarations that OCGA § 16-11-131 is unconstitutional under both the United States and Georgia Constitutions." And because Kuhlman's statutory claim also comes within the constitutional waiver of sovereign immunity, we need not decide in this case whether, or the extent to which, sovereign immunity is waived under Article I, Section II, Paragraph V (b) (1) of the Georgia Constitution when an action includes some claims that meet the conditions set out in that subparagraph and others that do not. Cf. *State v. SASS Group*, 315 Ga. 893, 904 (II) (d) (885 SE2d 761) (2023) (holding that "if a lawsuit is filed against the State pursuant to Paragraph V and that suit includes an independent claim against another party not specified in that paragraph's waiver provision, then the entire lawsuit must be dismissed").

[6] The superior court properly made an alternative ruling on the merits of Kuhlman's statutory claim before addressing his constitutional claims, and we similarly reach the statutory issue before the constitutional claims. See *Cottrell v. Smith*, 299 Ga. 517, 520 (I) (A) (788 SE2d 772) (2016) (stating that "a trial court should first resolve other questions regarding a statute before

8

In the absence of any Georgia case law construing OCGA § 16-11-131 (d), the superior court looked to federal case law interpreting a broader exclusion from the federal statutory law that prohibits felons from possessing firearms. Kuhlman argues only that his conviction for health care fraud meets the test used in federal case law for determining whether a crime comes within the federal exclusion.

When interpreting a Georgia statute, federal court decisions construing a federal statute or rule have persuasive value only to the extent that the language and context of the Georgia statute at issue are materially similar to the federal statute or rule. See *General Motors v. Buchanan*, 313 Ga. 811, 821 (2) (c) (874 SE2d 52) (2022) ("[W]here the language of a Georgia statute deviates from the federal rules [of evidence], the persuasive value of the authority

---

addressing an issue of constitutionality," and adding that "it is well settled that this Court will not decide a constitutional question if the decision in the appeal can be made upon other grounds"). See also *State v. Randall*, 315 Ga. 198, 200 (1) (880 SE2d 134) (2022) ("[I]nquiry into the constitutionality of a statute generally should not be made by the trial courts if a decision on the merits can be reached without doing so." (citation and punctuation omitted)).

interpreting and applying the federal rules is diminished."); *Stubbs v. Hall*, 308 Ga. 354, 358 (3) (a) (840 SE2d 407) (2020) ("In construing a Georgia statute that closely tracks federal statutory law, we may look to federal court decisions and commentary interpreting the federal statute as persuasive authority." (citation and punctuation omitted)); *Community & Southern Bank v. Lovell*, 302 Ga. 375, 377 (2) n.6 (807 SE2d 444) (2017) ("[A]lthough there are some differences between the state and federal provisions, those differences are not material to the question presented here. We may, therefore, look for guidance in decisions of the federal courts."). See also *Buckner-Webb v. State*, 314 Ga. 823, 834 (1) (878 SE2d 481) (2022) (Pinson, J., concurring) ("[W]hen we need to figure out the meaning of Georgia law, decisions of federal courts . . . are helpful 'only to the extent that [those] decisions actually were guided by the same language, history, and context' of the Georgia law in question. When we rely on such federal decisions without making sure the relevant text and context match up, we risk giving an 'interpretation' of Georgia law that is arbitrary, wrong, or both."

(quoting *Elliott v. State*, 305 Ga. 179, 188 (II) (C) (824 SE2d 265) (2019))).

The federal statute that contains language similar to OCGA § 16-11-131 (d) was part of the Gun Control Act of 1968 and, as originally enacted, excluded the following from the felonies that disqualified convicted persons from acquiring or possessing firearms: "Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices as the Secretary [of the Treasury] may by regulation designate." Pub. L. No. 90-618, § 921 (a) (20) (A), 82 Stat. 1213, 1216 (1968). See also *Reyes v. Sessions*, 342 FSupp.3d 141, 143 (I) (D. D.C. 2018) (recounting and explaining the history of that provision). "Ultimately, the Secretary never designated any 'similar offenses' as excluded, and in 1986 Congress eliminated from the definition the phrase, 'as the Secretary may by regulation designate[.]'" *Reyes*, 342 FSupp.3d at 143 (I). Thus, since 1986, the federal statute has excluded those "Federal or State offenses pertaining to antitrust

11

violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices[.]" 18 USC § 921 (a) (20) (A). Georgia has never enacted the federal "similar offenses" or "business practices" exclusion. Instead, the General Assembly in 1983 adopted only part of the language in the federal statute so as to exclude only those felonies "pertaining to antitrust violations, unfair trade practices, or restraint of trade," and did not add "similar offenses" or other proscribed "business practices." Ga. L. 1983, p. 945, § 1.

Very few federal courts have construed the language of the similar federal statute, and every United States Court of Appeals that has done so since the 1986 amendment has not considered in isolation the language shared by the Georgia statute, but has invariably construed the "similar offenses"/"business practices" exclusion that is absent from the Georgia statute.[7] See *United States v. Miller*, 678 F3d 649, 651-653 (II) (8th Cir. 2012); *United States v.*

_____

[7] One United States Court of Appeals considered the federal statute prior to the 1986 amendment. See *United States v. Meldish*, 722 F2d 26, 27-28 (2d Cir. 1983).

*Coleman*, 609 F3d 699, 703-706 (II) (A) (5th Cir. 2010); *United States*

*v. Schultz*, 586 F3d 526, 529-530 (II) (A) (1) (7th Cir. 2009); *United*

*States v. Stanko*, 491 F3d 408, 413-419 (II) (8th Cir. 2007). See also

*Reyes*, 342 FSupp.3d at 149-151 (II) (A) (reviewing the analysis in

these federal circuits). Those circuits examine the elements and

sometimes the purpose of the offense at issue to determine whether

it is similar to the enumerated offenses in that it is a commercial

offense that addresses economic harm to competition or consumers.

See *Reyes*, 342 FSupp.3d at 148 (II). Under that analysis, it is not

necessary to examine whether the offense at issue "pertain[s] to

antitrust violations, unfair trade practices, or restraint of trade"

separately from whether the offense is a "similar" one that "relat[es]

to the regulation of business practices." See, e.g., id. at 151 (II) (A)

n.6 ("[A] separate examination of whether [appellant's] securities

offenses are 'unfair trade practices' is unnecessary."). Under Georgia

law, however, not only is such a separate examination of the former

necessary, any consideration of whether the offense at issue is

similar or generally related to regulation of business practices is

simply not relevant at any point in an analysis of the pertinent exclusion in OCGA § 16-11-131 (d). Yet Kuhlman does not acknowledge any difference between the federal and state statutes, nor does he attempt a separate examination of whether the health care fraud for which he was convicted pertains specifically to antitrust violations, unfair trade practices, or restraint of trade.

Kuhlman makes no argument that his healthcare fraud conviction is an offense that pertains to any of these three specific categories. Instead, he only applies the federal courts' test for 18 USC § 921, and contends that his crime was a "commercial crime[ ]" that violated a statute "designed to prevent an adverse economic effect on competition or consumers." *Reyes*, 342 FSupp.3d at 148 (II) (quoting *Coleman*, 609 F3d at 708 (II) (B); punctuation omitted). But as we just explained above, that federal test is directed at determining whether an offense is a "similar offense[ ] relating to the regulation of business practices," not whether the offense falls within one of the three categories specified by our statute. So even if his conviction met that test, that would not show whether his

14

conviction falls within one of the three specific categories set out in our statute. Absent any argument that his conviction falls within any of those specific categories in the Georgia statute, Kuhlman may not receive his requested declaratory relief on this claim. Accordingly, the superior court's alternative ruling that rejected Kuhlman's statutory claim on the merits must be affirmed.

4. Because Kuhlman has not prevailed on his statutory claim, we must proceed to his constitutional claims. Although the superior court did rule on the merits of Kuhlman's state constitutional claim, the court erred in concluding that it could not reach the merits of Kuhlman's federal constitutional claim.

Kuhlman contends that the superior court erred because it effectively ruled that 42 USC § 1983 preempts all state-law remedies for violations of the United States Constitution. Indeed, that does appear to be the import of the superior court's ruling that "[f]ederal constitutional claims, whether in federal or state courts, are necessarily brought pursuant to 42 USC § 1983."

But the State has conceded in its appellate brief, as well as in

15

oral argument, that "§ 1983 does not preclude state causes of action for violations of federal constitution[al] rights." (Emphasis omitted.) And the United States Supreme Court recently reaffirmed that "the § 1983 remedy is, in all events, supplementary to any remedy any State might have." *Health and Hosp. Corp. of Marion County v. Talevski*, 599 U. S. ___, ___ (II) (B) (1) (143 SCt 1444, 1453, 216 LE2d 183) (2023) (citation and punctuation omitted). See also *Zinermon v. Burch*, 494 U. S. 113, 124 (III) (A) (110 SCt 975, 108 LE2d 100) (1990) (explaining that section 1983 provides a remedy for violations of civil rights where state law is inadequate or not available in practice). Where a section 1983 claim has not been alleged or is not viable because the defendant is the State or a State board and therefore not a "person" against whom a section 1983 claim will lie, a plaintiff nevertheless is entitled to seek enforcement of his constitutional rights to the extent of an applicable waiver of sovereign immunity if the State has authorized the remedy sought. See *State Bd. of Ed. v. Drury*, 263 Ga. 429, 433-434 (2), (3) (437 SE2d 290) (1993) (holding that where a section 1983 claim was neither

16

alleged nor viable, plaintiffs in that case had no right to bring an action for damages that the State had not authorized and for which sovereign immunity had not been waived, and plaintiffs instead were relegated to a declaratory judgment action as authorized by the Administrative Procedure Act).

In this case, Kuhlman did not mention section 1983 in his amended complaint, but he expressly sought a declaratory judgment. Under a plain reading of that complaint,[8] construed in Kuhlman's favor as required, the superior court could not have reasonably concluded that it was brought under section 1983, especially given that theory of recovery would not have been viable. See *Lynch v. Waters*, 256 Ga. 389, 391 (349 SE2d 456) (1986) (on motion for summary judgment, both "the evidence and pleadings will be construed in favor of the non-moving party"). To the contrary, a theory of recovery based on general state law regarding

---

[8] The Civil Practice Act provides that, on motion for summary judgment, although the non-movant "may not rest upon the mere allegations or denials of his pleading," OCGA § 9-11-56 (e), the pleadings nevertheless must be examined, OCGA § 9-11-56 (c), (d).

17

declaratory judgment actions can be reasonably and fairly drawn from Kuhlman's amended complaint. See *City of Rome v. Turk*, 235 Ga. 223, 225 (1) (219 SE2d 97) (1975) ("Under the Civil Practice Act a complaint is to be construed in the light most favorable to plaintiff and all inferences that can be reasonably drawn are to be construed in plaintiff's favor, and in a motion for summary judgment this same preference is to be given to the party opposing the motion." (citation omitted)).

OCGA § 9-4-2 created a cause of action for declaratory relief. See also OCGA § 9-4-3 (referring to "a cause of action for declaratory relief"); *Lathrop v. State*, 301 Ga. 408, 431 (III) (B) (801 SE2d 867) (2017) (observing that the remedy of an "action for declaratory relief" was not "recognized in Georgia until the enactment of the Declaratory Judgment Act[, OCGA § 9-4-1 et seq.,] in 1945"). And in general, declaratory judgment actions that seek review of the constitutionality of Georgia statutes have been authorized in the courts of this state, if they are not barred by sovereign immunity or otherwise unavailable. See *Gardei v. Conway*, 313 Ga. 132, 138-139

18

(2) (b) (868 SE2d 775) (2022) ("[A]lthough Georgia does not have a statutory cause of action like 42 USC § 1983 under which a person can assert claims under the Georgia Constitution, declaratory judgment actions for claims asserting the violation of individual rights are authorized under our State's Constitution."); *Bd. of Commrs. of Lowndes County v. Mayor and Council of City of Valdosta*, 309 Ga. 899, 903-904 (2) (b) (848 SE2d 857) (2020) (collecting cases showing that suits for declaratory and injunctive relief against state officials in their individual capacities have long been authorized in Georgia); *Women's Surgical Center v. Berry*, 302 Ga. 349, 350-351 (1) (806 SE2d 606) (2017) (holding that a declaratory judgment action against state officials was available to test the validity of an allegedly unconstitutional law because the plaintiff had standing and was not required to exhaust its administrative remedies). Now that sovereign immunity no longer bars properly filed suits against the State seeking declaratory relief for alleged constitutional violations by "the state or any agency, authority, branch, board, bureau, commission, department, office, or

19

public corporation of this state or officer or employee thereof," an action against the State for such declaratory relief can be an appropriate method for seeking review of the constitutionality of Georgia statutes.[9] See *Knox v. State of Ga.*, 316 Ga. 426, 427 (888 SE2d 497) (2023) ("An action against the State of Georgia in the superior court for a declaratory judgment is the appropriate litigation mechanism for . . . review" of the constitutionality of statutes. (citing Ga. Const. of 1983, Art. I, Sec. II, Par. V (b); OCGA §§ 9-4-2; 9-4-3)); *State v. SASS Group*, 315 Ga. 893, 893 (885 SE2d

---

[9] Of course, an action for declaratory judgment must meet other longstanding requirements for such actions. See *Sexual Offender Registration Review Bd. v. Berzett*, 301 Ga. 391, 392-393 (801 SE2d 821) (2017) (The Declaratory Judgment Act gives superior courts the power to declare rights and other legal relations of any interested party only "in 'cases of actual controversy' under OCGA § 9-4-2 (a) and 'in any civil case in which it appears to the court that the ends of justice require that the declaration should be made.' OCGA § 9-4-2 (b)." (citation and punctuation omitted)); *Fulton County v. City of Atlanta*, 299 Ga. 676, 677 (791 SE2d 821) (2016) ("[T]he Declaratory Judgment Act, OCGA § 9-4-1 et seq., authorizes declaratory judgments only to resolve actual and justiciable controversies. See OCGA § 9-4-2 (a), (b)."). See also Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (3) ("Unless otherwise provided herein, this Paragraph shall not affect the power or duty of a court to dismiss any action or deny relief based on any other appropriate legal or equitable ground or other limitation on judicial review, including, but not limited to, administrative exhaustion requirements, ante litem notice requirements, sanctions for frivolous petitions, standing, statutes of limitation and repose, and venue. . . .").

761) (2023) ("This new waiver allows citizens to sue the State . . . for declaratory relief."). Cf. *Lathrop*, 301 Ga. at 444 (IV) (holding that suits against the State for declaratory relief from the enforcement of allegedly unconstitutional laws are barred unless the State has consented in the Constitution itself or the statutory law). Consequently, a declaratory judgment action was a proper method for Kuhlman to seek review of the constitutionality of OCGA § 16-11-131 as applied to him, and the superior court erred when it failed to construe Kuhlman's complaint as properly seeking declaratory relief against the State based on Georgia law rather than on 42 USC § 1983. Accordingly, that part of the superior court's judgment which rules Kuhlman cannot maintain his federal constitutional claim must be vacated.

Kuhlman also contends that the superior court erred by ruling that his state constitutional claim fails on the merits under our decision in *Landers v. State*, 250 Ga. 501, 503 (3) (299 SE2d 707) (1983). The holding of *Landers* squarely forecloses that claim, and Kuhlman asks us to overrule it. We need not address that argument

21

at this time. Because the superior court rejected the federal constitutional claim under its section 1983-based theory, it did not reach the merits of that federal claim. Now that the superior court will presumably reach the merits of that claim, it is possible that the court would decide the claim in Kuhlman's favor, and if that were the case, it would avoid the need to reach his state constitutional claim, and his corresponding argument that *Landers* should be overruled. Because we generally do not decide constitutional questions unnecessarily, see *Raffensperger v. Jackson*, 316 Ga. 383, 399 (5) (b) (888 SE2d 483) (2023) ("Because we have determined that the Act is unconstitutional on one of the grounds asserted, we need not address Plaintiffs' arguments that the trial court erred in ruling that the Act does not violate their equal protection rights under the Georgia Constitution."), we therefore vacate the superior court's decision as to the state constitutional claim and leave it to that court in the first instance to address Kuhlman's federal and state constitutional claims on remand. If the court rejects each of those claims on their merits, they will be reviewable on appeal.

*Judgment affirmed in part, reversed in part and vacated in part, and case remanded with direction. All the Justices concur.*

Decided September 6, 2023.

OCGA § 16-11-131; constitutional question. Fulton Superior Court. Before Judge Leftridge.

*John R. Monroe*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Tina M. Piper, Cristina M. Correia, Senior Assistant Attorneys General, Stephen J. Petrany, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General*, for appellee.