NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 11, 2024

S24A0361. STARSHIP ENTERPRISES OF ATLANTA, INC. v. GWINNETT COUNTY.

WARREN, Justice.

In October 2022, Starship Enterprises of Atlanta, Inc. filed its second lawsuit against Gwinnett County challenging a 2015 Gwinnett County ordinance regulating "Adult Establishments." It filed that suit under Article I, Section II, Paragraph V of Georgia's Constitution ("Paragraph V"), which was added by amendment in 2020 and waives sovereign immunity for certain lawsuits, including lawsuits against a county for declaratory judgment and related injunctive relief. In March 2023, the trial court dismissed Starship's lawsuit, holding that it was barred by sovereign immunity and by res judicata. Starship filed an appeal in the Court of Appeals, which transferred the case to this Court on the ground that the case

involves the novel constitutional question of what counts as a "past, current, or prospective act occurring after January 1, 2021" as used in Paragraph V.  For the reasons explained below, we conclude that although the constitutional waiver of sovereign immunity contained in Paragraph V applies to Starship's lawsuit, the suit is barred by res judicata.  We therefore affirm the trial court's order dismissing it.[1]

1.    In January 2017, Starship, which owns two stores in Gwinnett County, filed a lawsuit against Gwinnett County for declaratory judgment and an injunction, asking the trial court to declare certain parts of Gwinnett County Ordinance 2015-1082 ("the Ordinance") unconstitutional.  The Ordinance "amend[ed] Chapter 18 of the Gwinnett County Code of Ordinances by repealing" ordinances regarding "Adult Entertainment Establishments" and enacted a new article entitled "Adult Establishments."  As enacted by the Ordinance, Section 18-292 of the Gwinnett County Code of Ordinances defines "Adult Establishment" as including a "Sex

---

[1] The case was orally argued before this Court on March 19, 2024.

Paraphernalia Store," and defines "Sex Paraphernalia Store" as:

> a commercial establishment where more than 100 sexual devices are regularly made available for sale or rental. This definition shall not be construed to include any establishment located within an enclosed regional shopping mall or any pharmacy or establishment primarily dedicated to providing medical products.

Section 18-293 (a) says that "[i]t shall be unlawful for any person to operate an adult establishment in the County without a valid adult establishment license."

As alleged in Starship's complaint, the Gwinnett County Department of Planning and Development refused to renew Starship's occupational tax certificate in February 2016, reasoning that under the Ordinance, "Starship's business was unlawful." As a result, Starship limited the number of "sexual devices" in each of its stores to 100. Gwinnett County sent inspectors to Starship's stores twice, and in July 2016, the County was satisfied that Starship had complied with the Ordinance and renewed the occupational tax certificates for both stores.

In its 2017 complaint, Starship alleged that the Ordinance

3

violates due process because several terms contained in the Ordinance, including "regularly made available for sale or rental," are unconstitutionally vague; violates due-process privacy rights under the Georgia Constitution by restricting the number of "sexual devices" available for sale; violates Georgia constitutional due-process property and liberty rights by exempting certain merchants from the regulation; and violates Georgia equal-protection rights because the exemptions to the definition of "sex paraphernalia store" have no rational relationship to the purpose of the Ordinance. Gwinnett County filed a counterclaim for injunctive relief, alleging that Starship had repeatedly violated County ordinances by operating "sex paraphernalia stores" without an adult establishment license and in areas where "sex paraphernalia stores" are not permitted by the County zoning ordinances. The County requested "a temporary restraining order, an interlocutory injunction, and a permanent injunction" ordering Starship not to regularly make "more than 100 sexual devices . . . available for sale or rental."

4

In November 2017, after this Court decided *Lathrop v. Deal*, 301 Ga. 408 (801 SE2d 867) (2017), Starship voluntarily dismissed its complaint without prejudice. See OCGA § 9-11-41 (a) (allowing for a plaintiff to dismiss an action without prejudice "without order or permission of court").[2] Gwinnett County, however, maintained its counterclaim, and moved for summary judgment. In January 2018, the trial court granted Gwinnett County's motion for summary judgment and injunction. The trial court held that Starship had routinely violated the Ordinance and granted the County a permanent injunction restraining Starship from "regularly making more than 100 sexual devices available for sale" at each of Starship's

---

[2] *Lathrop* held that "the doctrine of sovereign immunity extends generally to suits against the State, its departments and agencies, and its officers in their official capacities for injunctive and declaratory relief from official acts that are alleged to be unconstitutional." *Lathrop*, 301 Ga. at 409. *Lathrop* also held that "the doctrine of sovereign immunity usually poses no bar to suits in which state officers are sued in their individual capacities for official acts that are alleged to be unconstitutional." Id. at 434. In December 2017, Starship filed a second lawsuit arguing that the Ordinance is unconstitutional, this time naming Gwinnett County commissioners in their individual capacities as the defendants. In January 2019, the trial court granted the County's motion for summary judgment on the basis of legislative immunity.

5

two Gwinnett County locations.[3]

Starship appealed the decision, arguing that Gwinnett County was not entitled to a permanent injunction because the County had other remedies available. In a March 2019 unreported decision, the Court of Appeals affirmed the trial court's grant of a permanent injunction against Starship, holding that "there was sufficient evidence for the trial court to conclude that without enjoining Starship, it would likely continue to habitually violate the law."

In October 2022, Starship filed another lawsuit against Gwinnett County—which is the subject of this appeal—alleging that the Ordinance is unconstitutional in several respects and asking for a declaratory judgment and injunctive relief. In this suit, Starship invoked Paragraph V's waiver of sovereign immunity.[4] Like the

---

[3] For purposes of this opinion, we will refer to this case as "*Starship I.*"

[4] Article I, Section II, Paragraph V (b) of Georgia's Constitution says, in relevant part:

(l) Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or

complaint in *Starship I*, this complaint summarized the same facts about the Ordinance and Starship's efforts to reduce the number of sexual devices for sale in each of its stores to comply with the Ordinance; raised the same arguments as to due process and equal protection; and further alleged that the Ordinance violates Starship's free speech rights by curtailing the sale of sexual devices.[5]

municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

(2) Actions filed pursuant to this Paragraph against this state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof shall be brought exclusively against the state and in the name of the State of Georgia. Actions filed pursuant to this Paragraph against any county, consolidated government, or municipality of the state or officer or employee thereof shall be brought exclusively against such county, consolidated government, or municipality and in the name of such county, consolidated government, or municipality. Actions filed pursuant to this Paragraph naming as a defendant any individual, officer, or entity other than as expressly authorized under this Paragraph shall be dismissed.

[5] Specific allegations in the complaint will be further detailed as necessary in Division 2 (b) below.

In December 2022, Gwinnett County moved to dismiss Starship's complaint on the ground that it was barred by res judicata and sovereign immunity. In response, Starship argued that res judicata did not apply because it dismissed its complaint in *Starship I* because it was barred by sovereign immunity, and that sovereign immunity did not bar its new lawsuit because Paragraph V applies to "past, current, and prospective acts which occur on or after January 1, 2021," and the Ordinance would be enforced with prospective acts occurring after that date.

In March 2023, the trial court granted Gwinnett County's motion to dismiss. The court held that Starship's claims were barred by res judicata, explaining:

> [T]he claims that Starship alleges here are identical to claims it raised in Starship I, or that it could have put in issue in that case. . . . Whether Starship's challenges to the Ordinance are characterized as affirmative defenses to, or compulsory counterclaims against, enforcement of the Ordinance, the time for Starship to assert those challenges was in *Starship I*.

The trial court also held that Starship's claims were barred by sovereign immunity. The trial court explained that Paragraph V did

8

not apply in this case because it applies only "to past, current, and prospective acts which occur on or after January 1, 2021." Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (1). The trial court reasoned that "[t]he Ordinance that Starship wants to challenge was adopted in 2015, so Starship's cause of action against the Ordinance arose many years before the waiver amendment passed." Starship appealed the trial court's dismissal to the Court of Appeals, which transferred the case to this Court because the threshold question of sovereign immunity and the construction of "past, current, and prospective acts" under Article I, Section II, Paragraph V (b) (1) poses a novel constitutional question.

2. Sovereign immunity, unlike res judicata, is a threshold jurisdictional issue, so we address it first. See *City of College Park v. Clayton County*, 306 Ga. 301, 314 (830 SE2d 179) (2019) ("The applicability of sovereign immunity . . . is a jurisdictional issue."). See also *Joyner v. Leaphart*, 314 Ga. 1, 6 n.8 (875 SE2d 729) (2022) (indicating that res judicata is "an affirmative defense" and not "a jurisdictional matter"). "The constitutional doctrine of sovereign

9

immunity bars any suit against the State to which it has not given its consent, . . . including suits for injunctive and declaratory relief from the enforcement of allegedly unconstitutional laws." *Lathrop*, 301 Ga. at 444. See also Ga. Const. of 1983, Art. I, Sec. II, Par. IX. We have long held that sovereign immunity applies to counties. See *Lathrop*, 301 Ga. at 421-422.

Sovereign immunity can be waived by statute or constitutional amendment, however, and one such waiver was added to our Constitution when the people of Georgia ratified Act 596 (H.R. No. 1023) in November 2020. As explained above, this waiver is codified in Article I, Section II, Paragraph V of Georgia's Constitution and says, in relevant part:

> (b) (l) Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this

Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

There is no dispute that Starship's lawsuit is the type of lawsuit that this sovereign immunity waiver could apply to; it is an "action[] in the superior court seeking declaratory relief from the acts of . . . [a] county" and seeking to "enjoin such acts." Paragraph V (b) (1).[6]

The trial court held, and the County argues, that Paragraph V does not apply, however, because Starship's lawsuit does not satisfy the final sentence of Paragraph V (b) (1): it does not concern any "past, current, and prospective acts which occur on or after January 1, 2021." Specifically, the trial court held that Paragraph V did not apply because the Ordinance was adopted in 2015, so "Starship's cause of action against the Ordinance arose many years before the waiver amendment passed." The County, although agreeing with

---

[6] There is also no dispute that Starship's lawsuit, brought against Gwinnett County, satisfies the requirement in Article I, Section II, Paragraph V (b) (2) that actions against a county must "be brought exclusively against such county."

11

the trial court's holding, offers a different reason that Paragraph V does not apply to Starship's lawsuit. In this Court, the County conceded that acts of the County other than the passage of the Ordinance could be "acts" under Paragraph V, such as the County's denial of Starship's occupational tax certificate in 2016. The County argues, however, that Starship has not met the requirement of Paragraph V because it has failed to allege any act of the County— including any "prospective act"—that occurred after January 1, 2021 from which Starship seeks relief.

For the reasons discussed below, we disagree with the trial court's holding and with the County's separate argument and conclude that Starship's lawsuit seeks declaratory and injunctive relief from "prospective acts" that will occur after January 1, 2021, and therefore Paragraph V's sovereign immunity waiver applies.

(a) *The trial court failed to recognize the breadth of the definition of "act" in Paragraph V.*

The trial court's holding that Paragraph V does not apply because the Ordinance was enacted in 2015 appears to be based on

the notion that the only relevant "act" about which Starship could complain—at least for purposes of availing itself of the sovereign immunity waiver in Paragraph V—was the County's passage of the Ordinance. Putting aside whether the mere passage of an ordinance is the kind of "act" contemplated by the language of Paragraph V,[7] we conclude that the word "act" as used in Paragraph V is not limited to only such an action.

To be sure, Paragraph V does not define "act" or give examples of what constitutes an "act" under the paragraph. But dictionaries from around the time Paragraph V was enacted reveal that "act" can be defined as "the doing of a thing," Merriam-Webster's Collegiate Dictionary (Merriam Webster 2020), at 12, and "a thing done; deed," Webster's New World College Dictionary (Houghton Mifflin

---

[7] We need not decide whether the mere passage of an ordinance is an "act" subject to Paragraph V's waiver of sovereign immunity because there is no question that the Ordinance was enacted well before the effective date of the waiver of sovereign immunity set out in Paragraph V, so any lawsuit that challenged the passage of the Ordinance itself could not take advantage of the Paragraph V waiver. Similarly, we need not decide whether and when a party would have standing to challenge the mere passage of an ordinance itself, as opposed to, for example, the past or future enforcement of that ordinance against the party. As we discuss below, Starship's lawsuit here challenges the enforcement of the Ordinance against Starship.

Harcourt 2016), at 13. See also *State v. SASS Group, LLC*, 315 Ga. 893, 898, 900 (885 SE2d 761) (2023) (interpreting Paragraph V and explaining that when we interpret constitutional provisions, we "consider the ordinary meaning of the words as they appear in the Constitution" and "consider text in context") (citation and punctuation omitted). That definition is consistent with the text of Paragraph V, which contemplates lawsuits seeking relief from acts not only of the state or county but also acts of, for example, "officer[s] or employee[s]" of a state "board, . . . office, or public corporation." See also *Kuhlman v. State*, 317 Ga. 232, 235 (892 SE2d 753) (2023) (holding that the appellant's lawsuit for declaratory relief "comes within the constitutional waiver of sovereign immunity" in Paragraph V, where a State board denied the appellant's application for relief from the prohibition on the possession of firearms by convicted felons and the appellant sought declaratory relief that this denial violated the laws of the state).[8]

---

[8] An alternate definition of "act" is "the formal product of a legislative body." Merriam-Webster's Collegiate Dictionary (Merriam Webster 2020), at

It follows that the trial court should have considered other "things" the County has "do[ne]" or could "do[]," see Merriam-Webster's Collegiate Dictionary (Merriam Webster 2020), at 12, related to the Ordinance from which Starship could seek relief. For example, denying Starship an occupational tax certificate was a "thing" the County did to enforce the Ordinance. See id. Thus, the trial court erred by concluding that because the Ordinance was passed in 2015, Starship's lawsuit did not qualify for a waiver of

---

12. Neither party argues that this is an appropriate definition of act as used in Paragraph V (b) (1). Notably, even the trial court's holding —although it focused on the year the Ordinance was passed—seemed to treat the *passing* of the Ordinance as the "act" at issue, as opposed to the Ordinance itself being the "act." We agree that this alternate definition does not apply in interpreting the meaning of "act" in Paragraph V (b) (1). Not only does Paragraph V discuss acts performed by entities that generally cannot pass laws or ordinances (such as "officer[s] or employee[s]" of a state "board, . . . office, or public corporation), but the provision also talks about "acts which occur," and generally laws or ordinances would be described as being "passed" or "enacted," rather than "occurring." Other textual clues in Paragraph V support this interpretation: later in Paragraph V, when the provision uses "act" to refer to laws, it makes that clear by referencing the General Assembly and capitalizing "act." See Paragraph V (b) (3) ("The General Assembly by an Act may limit . . ."); Paragraph V (b) (4) ("authorized by Act of the General Assembly"). See also, e.g., *SASS Group*, 315 Ga. at 900 (explaining that our determination of the meaning of the exclusivity requirement in Paragraph V "is further confirmed by the context of other language in Paragraph V and other parts of the same section of the Constitution").

15

sovereign immunity under Paragraph V.[9]   We now turn to the

[9] In support of its conclusion, the trial court cited *Donaldson v. Department of Transportation*, 262 Ga. 49 (414 SE2d 638) (1992); *Brantley County Development Partners, LLC v. Brantley County*, 540 FSupp3d 1291 (S.D. Ga. 2021); and *Crisp v. Georgia*, 2022 WL 3589673 (11th Cir. Aug. 23, 2022).  None of these cases is persuasive here.

First, *Donaldson*—the only case from this Court the trial court cited—dealt with a sovereign immunity provision different from Paragraph V, which means the Court did not consider the meaning of "past, current, or prospective acts," but instead decided whether a 1991 amendment to the Georgia Constitution that pertained to sovereign immunity, which was "silent on the issue of retroactive application," would be applied prospectively only.  262 Ga. at 53.  And the Court looked not at the date of any alleged wrongs done by the government, but at the date the lawsuit was filed: "Under Georgia law, the waiver of sovereign immunity occurs at the time that the *action arises*, not at the time that the negligent act *was committed*.  We now hold that the state may withdraw its waiver of sovereign immunity at any time before a citizen acts in reliance on that waiver *by filing suit*."  *Donaldson*, 262 Ga. at 53 (emphasis added).  Thus, the Court concluded that the 1991 amendment did not apply to an action filed in 1988.  See id.  This conclusion has no application to Paragraph V, the text of which makes the relevant sovereign-immunity waiver applicable based on when "acts of the State" or other applicable government entities occurred, not when the lawsuit was filed by the plaintiff.  For this reason, we conclude that *Donaldson* has no bearing on our analysis of Paragraph V.

In *Brantley County*, a federal district court purported to apply *Donaldson*'s reasoning in interpreting Paragraph V, but—as we have just explained—the text of the constitutional amendment at issue in *Donaldson* was so dissimilar to the text of the 2020 amendment at issue in this case that *Donaldson*'s reasoning is not the key to deciphering the meaning of Paragraph V.  See *Brantley County*, 540 FSupp3d at 1305 (citing *Donaldson* to determine that the waiver in Paragraph V did not apply in a case where the petitioners filed their lawsuit in September 2020, without considering whether the complaint concerned any "prospective acts" that would occur after January 1, 2021).  Moreover, even if we applied the reasoning of *Donaldson* and *Brantley County*, we would conclude that Paragraph V (effective in January 2021) is applicable to Starship's lawsuit (filed in October 2022).  Finally, *Crisp* provides

County's argument that Starship has failed to allege that it seeks relief from an "act" that happened after January 1, 2021.

> (b) *The County's argument fails to acknowledge that Starship has alleged that it seeks relief from the County's prospective acts of enforcement, which will occur after January 1, 2021.*

In arguing that Starship has not alleged that it seeks relief from an act that occurred after January 1, 2021, the County points out that in its complaint, Starship alleges that the County committed several acts, such as passing the Ordinance and denying Starship's occupational tax certificate, and all of these acts occurred before January 1, 2021. The County argues that these past acts are the only ones we should consider when determining if Paragraph V applies because Starship has failed to allege any "prospective" acts— i.e. acts that will happen in the future—from which it seeks relief. We disagree.

In its complaint, Starship alleged that Gwinnett County's

---

no guidance here because the government action at issue in that case related to an allegedly unlawful arrest, and the court explained that "the challenged acts all predate January 1, 2021." See 2022 WL 3589673, at *3. Thus, it does not appear that the complaint in that case implicated any prospective acts, whereas, as discussed further below, Starship's lawsuit here does.

actions "have created a *bonafide* controversy between the parties, and Plaintiffs are in doubt as to their rights, privileges, and immunities with respect to the enforcement of the licensing scheme at issue." Starship sought "a declaratory judgment declaring its rights, privileges, and immunities and injunctive relief enjoining Defendant from enforcing unconstitutional parts of its Ordinances." These statements demonstrate that in its lawsuit for declaratory judgment and an injunction, Starship sought relief not only from the passage of the 2015 Ordinance but also from the *prospective enforcement* of that Ordinance.

Specifically, in the portion of its complaint titled "Standing," Starship alleges that it has "suffered injury-in-fact" by "having and *continuing to suffer* a curtailing of its right to sell lawful products." (Emphasis added.) And the "Facts" portion of the complaint makes clear that Starship has changed its business practices to comply with the Ordinance to be granted an occupational tax certificate. To that end, Starship details how in 2016, after the County denied it an occupational tax certificate, Starship limited the number of sexual

18

devices available for sale in its stores so that it could comply with the Ordinance, and how the County then sent inspectors to Starship's stores on two occasions before eventually concluding that Starship was in compliance with the Ordinance. Starship's complaint asserts: "As a direct result of Defendant's prohibition of having 'available for sale' no more than 100 sexual devises displayed or kept in stock," Starship has "permanently removed" over 800 "products" and over 1800 "items that were for sale prior to the enactment of [the] Ordinance" from each of its two stores. And "[t]he County's actions have deprived, and *will continue to deprive*, Starship of property rights and liberty interests protected by the Georgia Constitution." (Emphasis added.)

As described above, Starship's complaint demonstrates its concern about prospective enforcement of the Ordinance: Starship has stopped selling a significant number of sexual devices in response to the County's enforcement of the Ordinance, and Starship alleges that it wants to (and believes it is constitutionally entitled to) resume selling more devices. It is this alleged concern

19

that animates Starship's request for a declaratory judgment and related injunctive relief. And the County's representations at oral argument before this Court validate that concern; the County acknowledged that it plans to continue enforcing the Ordinance.[10]

Because Starship sufficiently alleges in its complaint that Starship seeks to stop future enforcement of the Ordinance—and such an act of enforcement is a "prospective act[]" that will occur after January 1, 2021—the County's sovereign immunity is waived under Paragraph V for Starship's lawsuit, and the trial court erred by concluding otherwise.

3. Starship's complaint must still be dismissed, however, because it is barred by res judicata. OCGA § 9-12-40 codifies "Georgia's basic common law rule of res judicata." *Coen v. CDC*

---

[10] At oral argument, the County initially argued that any future acts of enforcement would be enforcement of the 2018 injunction that was granted to the County in *Starship I* requiring Starship to follow the Ordinance, and not enforcement of the Ordinance itself. However, the County later conceded that the Ordinance was the basis for the injunction and that as long as the Ordinance remained the law, the County has an obligation to enforce it. We do not decide here whether or how Starship could challenge the 2018 injunction.

*Software Corp.*, 304 Ga. 105, 107 (816 SE2d 670) (2018). OCGA § 9-12-40 says:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

For res judicata to apply in Georgia, three requirements must be met: "(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." *Coen*, 304 Ga. at 105. There is no dispute that the second requirement is met: in both *Starship I* and this case, the parties are Starship and Gwinnett County. Thus, we consider whether the first and third requirements have been met, beginning with the third.

As to the third requirement, Starship does not argue that the trial court was not a "court of competent jurisdiction," but it argues that there was no "adjudication on the merits" because Starship voluntarily dismissed its lawsuit in *Starship I*, and a first voluntary

dismissal does not constitute an adjudication on the merits. Starship is correct that there was no adjudication of the merits of its lawsuit against the County in *Starship I*. See OCGA § 9-11-41 (a) (3) (stating that only a second notice of dismissal under that subsection "operates as an adjudication upon the merits").[11]

---

[11] In *Starship I*, the trial court actually did rule on some of Starship's constitutional claims, holding that the phrase "available for sale" is not unconstitutionally vague and that the County can "constitutionally regulate stand-alone adult stores differently than stores in a regional shopping mall." On appeal to the Court of Appeals, however, Starship argued that the trial court erred by addressing these constitutional matters because they were raised in Starship's dismissed claim against the County. (In oral argument before this Court, Starship's counsel similarly argued that he did not raise the constitutional matters in defending against the counterclaim. Although counsel acknowledged that he "talked about" constitutional considerations during the hearing on the County's counterclaim in *Starship I*, he asserted that he did not make a "complete presentation" of the constitutional matters. This Court does not have the record of the hearing in *Starship I* before us in this case.) The Court of Appeals agreed with Starship's assertion that the constitutional matters were raised only as part of the dismissed claim and reversed the trial court's holdings as to the constitutional matters on the ground that the trial court erred by addressing claims Starship raised in its dismissed complaint: "Assuming, arguendo, that Starship argued the merits of some of its constitutional claims during the hearing, the trial court had no power to reinstate the dismissed action and adjudicate any of Starship's dismissed claims. Consequently, the trial court's entry of summary judgment on Starship's constitutional claims was improper, and we reverse the trial court's grant of summary judgment as to those claims."

In light of this unique situation—where Starship has argued that it did not raise the constitutional matters in defending against the County's counterclaim and the Court of Appeals concluded that the constitutional matters were raised only as part of Starship's dismissed lawsuit and reversed

22

However, not every claim in *Starship I* was dismissed; the County continued to assert its counterclaim, and that lawsuit *was* adjudicated on the merits. And the preclusive effect of res judicata applies not only to matters that were "put in issue" but also those that "*might have been* put in issue." OCGA § 9-12-40 (emphasis added). Because, as we explain further below, Starship could have raised the constitutional matters in this counterclaim that was adjudicated on the merits, the third requirement of res judicata is met. See OCGA § 9-12-42 ("For a former judgment to be a bar to subsequent action, the merits *of the case* must have been adjudicated.") (emphasis added).

As to the final requirement of res judicata—"identity of the cause of action"—we have explained that "cause of action" in this context means "the entire set of facts which give rise to an

---

the trial court's ruling on the constitutional issues—and because the correctness of the Court of Appeals's *Starship I* holding is not at issue in this case, we will treat these constitutional matters as not having been raised in *Starship I*. We also note that the Court of Appeals's holding that the trial court had "no power" to rule on dismissed claims has no bearing on whether the trial court could have ruled on the constitutional matters if Starship had raised them in defending against the County's counterclaim.

enforceable claim." *Coen*, 304 Ga. at 105. "In considering the 'entire set of facts,' we focus on the 'wrong' that is asserted." Id.

This Court has explained that the requirement of identity of the cause of action is met "[s]o long as a party pleads but one wrong in respect to the same transaction, . . . and it makes no difference that the remedy sought to be applied under different procedures growing out of the same wrong may be different." *McCracken v. City of College Park*, 259 Ga. 490, 491 (1989). For example, in the first case at issue in *McCracken*, the city revoked McCracken's liquor license based on her violation of a city ordinance, McCracken filed a writ of certiorari to the superior court to appeal that judgment, and the superior court dismissed the writ and affirmed the judgment. See id. McCracken then filed a separate action for an injunction and damages sustained as a result of the enforcement of the same ordinance. See id. at 490. The trial court granted summary judgment to the city on the ground that McCracken's suit was barred by res judicata, and this Court affirmed, explaining that in both cases "only one wrong is complaint of, namely, the enforcement of an

24

allegedly unconstitutional ordinance," and "[t]he principal difference between the two actions is the nature of the relief sought," which we held did not defeat res judicata. Id. at 491. See also *Waggaman v. Franklin Life Ins. Co.*, 265 Ga. 565, 565-566 (458 SE2d 826) (1995) (holding that because Waggaman had the opportunity to litigate the ownership of his life insurance policy in an earlier divorce action, res judicata barred him from filing a later action against the insurance company and his ex-wife for a declaratory judgment that he owned the policy).[12]

Here, as in *McCracken*, the "wrong" at issue for Starship in both cases is the same: the County's enforcement of the allegedly

---

[12] We note that *Body of Christ Overcoming Church of God v. Brinson*, 287 Ga. 485 (696 SE2d 667) (2010), held, with no clear analysis, that a quiet-title action and a declaratory judgment action did not have "an identity of causes of action." See id. at 487. To the extent that case could be read to indicate that res judicata did not apply simply because different relief was sought, it was inconstant with *McCracken*, a case it did not acknowledge. More importantly, to the extent *Body of Christ* failed to consider the "entire set of facts which give rise" to the claim as the touchstone for whether the cases shared an identity of causes of action, it was implicitly overruled by *Coen*. See *Coen*, 304 Ga. at 105. Thus, *Body of Christ* does not prevent our application of res judicata in this case. See *Caldwell v. State*, 313 Ga. 640, 644 (872 SE2d 712) (2022) (explaining that this Court is not bound by cases that have been implicitly overruled, and we generally follow the decision in the most recent case).

unconstitutional Ordinance. See *McCracken*, 259 Ga. at 491. And the "entire set of facts" at issue in both the County's counterclaim for an injunction in *Starship I* and in Starship's current lawsuit are the same: both cases concern the County's enforcement of the Ordinance against Starship and what Starship has done to come into compliance. See *Coen*, 304 Ga. at 105 (explaining that in determining if the "cause of action" is the same, we look at "the entire set of facts which give rise to an enforceable claim"). And because the "wrong" and "entire set of facts" raised here are the same as those implicated in *Starship I*, the constitutional matters Starship raises here could have been raised in *Starship I*: although Starship voluntarily dismissed its claims, it still could have raised the relevant constitutional matters in response to the County's counterclaim, which the County pursued even after Starship dismissed its claims. In other words: in defending against the County's claim that it was entitled to an injunction enforcing the Ordinance against Starship, Starship could have argued that it should not be forced to comply with the

26

Ordinance because the Ordinance was unconstitutional—which would have "put in issue" in *Starship I* the constitutional matters that are now at issue on appeal after Starship filed this lawsuit based on the same wrong. See OCGA § 9-12-40.[13]

Because the requirements of res judicata are met and the constitutional matters Starship now seeks to raise "might have been put in issue" in *Starship I,* Starship's lawsuit is barred by res

---

[13] Although, as quoted in Division I above, the trial court in this case indicated that Starship's constitutional claims could be characterized as a "compulsory counterclaim," Starship actually could not have raised its constitutional claims affirmatively in *Starship I* in a claim or counterclaim against the County because such claims were barred by sovereign immunity at that time. See *Lathrop*, 301 Ga. at 444. See also *Heiskell v. Roberts*, 295 Ga. 795, 801 (764 SE2d 368) (2014) ("A 'counterclaim' is simply the way that a defendant brings a "claim" against the plaintiff in an existing lawsuit. OCGA § 9-11-13(a), (b). Such claims do not avoid immunity defenses because they are labeled 'counterclaims.' See OCGA § 9-11-13 (d); *Dept. of Human Resources v. Money*, 222 Ga. App. 149, 149, 473 SE2d 200 (1996) (applying sovereign immunity to counterclaims)."). However, sovereign immunity did not bar Starship from raising its claims that the Ordinance is unconstitutional in *defending* against the County's lawsuit *against* Starship for an injunction enforcing the Ordinance. See *Lathrop*, 301 Ga. at 425 ("[T]he doctrine of sovereign immunity bars *suits against the State* to which the State has not consented.") (emphasis added). See also *Piedmont Cotton Mills, Inc. v. Woelper*, 269 Ga. 109, 110 (1998) ("[I]t is only where the merits were not and could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense is valid.").

judicata.  OCGA § 9-12-40.  We therefore affirm the trial court's dismissal of Starship's complaint on the basis of res judicata.

*Judgment affirmed.  All the Justices concur, except Bethel and Ellington, JJ., not participating.*