**FIFTH DIVISION
MCFADDEN, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 3, 2025**

# In the Court of Appeals of Georgia

A25A0994. FRASER et al. v. GLYNN COUNTY

A25A1097. SEA ISLAND COMPANY et al. v. FRASER.

PIPKIN, Judge.

These related appeals concern a dispute involving real property on and around Sea Island, a barrier island located off Georgia's coast in Glynn County. In 1924,[1] T.L. Cain conveyed two tracts of land to Glynn County; the first tract of land was conveyed "for the purpose of a right of way for a road from St. Simons to [Sea Island]," while the second tract was conveyed "for the purposes of a park for the use and benefit of the public." The first tract of land became known as the causeway -- the only way to

---

[1] The history underlying this litigation is largely undisputed; to the extent that it is, we construe the pleadings "in the light most favorable to the nonmoving party with any doubts resolved in that party's favor." (Citation and punctuation omitted.) *Stillwell v. Topa Ins.*, 363 Ga. App. 126, 128 (871 SE2d 8) (2022).

access Sea Island by land -- and the second tract became known as Twitty Park. According to the relevant deed, if the tracts were to ever cease being used for their described purposes, the respective land would revert to Cain ("the Cain reverter").

In 1982, the County conveyed Twitty Park to The Sea Island Company ("SIC"), which, at that time, held title to most of Sea Island. Then, in 2004, facing a "storm drainage system on Sea Island . . . that [was] antiquated and essentially falling apart" -- and apparently without a budget "for the long-term replacement" of the system[2] -- Glynn County accepted SIC's request to abandon various land on Sea Island, including the causeway and certain then-public roads on the island. The causeway and roads were initially transferred to SIC in 2005 by quit claim deeds, but the County issued a corrected quit claim deed in 2009. At some point, in the mid-2000s, a gatehouse was erected to restrict access to Sea Island, and, more recently, there are "No Parking" and "Private Property" signs along the causeway. SIC went bankrupt in 2010, but its assets were transferred to various other corporate entities.

Years later, in 2016, the County's transfer of Twitty Park to SIC was successfully challenged in Glynn County Superior Court; the superior court

---

[2] The record reflects that the "probable cost estimate" for an asphalt overlay to the roads of Sea Island and to replace the storm-drainage system was approximately $5 million.

determined that the transfer was "void" and, consequently, that title to the park reverted to the County. In that same year, Jane Fraser obtained an interest in the Cain reverter from some, but not all, of Cain's heirs, and she has filed three separate, contemporaneous actions (two in state court and one in federal court) to challenge the County's purported abandonment of the causeway and various roads. The two state-court actions give rise to these appeals.

In A25A0994, Fraser and Jeff Kilgore filed a six-count, 85-page complaint against Glynn County seeking declaratory relief challenging the legality of the County's 2004 abandonment of the causeway and various roads; this action, however, was dismissed after the superior court agreed with the County that the action was barred by sovereign immunity. Fraser and Kilgore now appeal that decision.

In A25A1097, Fraser filed a verified petition for registration of lands under the Land Registration Law of 1917, OCGA §§ 44-2-40 to 44-2-253, to assert her claim to both the causeway and the various roads on Sea Island that had been deeded to SIC. Glynn County filed a special appearance motion to dismiss, asserting that Fraser failed to properly serve the county. The purported new corporate owners of the relevant causeway and roads -- Sea Island Company, LLC and Bridges and Roads, LLC

3

(collectively "the Sea Island Entities") -- filed a motion to dismiss arguing that Fraser did not have authority to initiate such a proceeding under the Land Registration Law's unique procedural requirements. While the superior court granted the County's motion to dismiss -- which has not been appealed -- the superior court denied the motion to dismiss filed by the Sea Island Entities; the superior court issued a certificate of immediate review, and this Court granted the Sea Island Entities' application for interlocutory appeal. We have consolidated these appeals for the purpose of this opinion.

For the reasons explained below, we affirm the judgment of the superior court dismissing Fraser's declaratory judgment action in Case No. A25A0994, but we vacate that portion of the superior court's order dismissing the action with prejudice and remand for the superior court to enter an order reflecting that the dismissal was without prejudice; we affirm the judgment of the superior court in part, reverse the judgment of the superior court in part, and remand for further proceedings in Case No. A25A1097.

1. We first turn to the action for declaratory relief. Fraser and Kilgore filed a six-count, verified complaint for declaratory relief against Glynn County. As explained in the complaint,

> Counts I through IV seek a declaration that the County's purported abandonment of certain specified roads to the Sea Island Company was ultra vires and that all such purported transfers are void.
>
> Count V seeks a declaration that the County's purported transfer of certain roads to the Sea Island Company that were never properly abandoned by the County were ultra vires and void.
>
> Count VI alternatively seeks a declaration that if the County properly abandoned the Causeway Segment, that title in the Causeway Segment reverted to the successors in title of T.L. Cain (the "Holders of the Cain Reverter") (which includes Fraser) because T.L. Cain's dedication of the Causeway Segment to the County specified that if the road ceased to be used by the public, title would revert back to T.L. Cain.

With respect to each count, the complaint avers that Fraser and Kilgore are "in a position of uncertainty regarding the ownership of [the relevant parcel] and the public's . . . ability to access [them]" and, further, that Kilgore faces uncertainty with respect to "his right to access" the causeway and various roads on Sea Island and "is at risk for criminal prosecution for trespassing." Following a hearing, the superior court granted the County's motion to dismiss, determining that the action was barred

by sovereign immunity; the superior court dismissed the action with prejudice. Fraser now challenges this ruling on appeal. As discussed below, we conclude that the superior court correctly determined that Fraser's petition for declaratory relief was barred by sovereign immunity; we also conclude that, even if Fraser and Kilgore have demonstrated a valid waiver of sovereign immunity, their declaratory judgment action lacks justiciability. Nevertheless, we agree with Fraser that the superior court should not have dismissed the action with prejudice.

(a) We first address sovereign immunity, which is a threshold jurisdictional issue. See, e.g., *College Park v. Clayton County*, 306 Ga. 301, 314 (5) (830 SE2d 179) (2019). "We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law. Factual findings are sustained if there is evidence supporting them, and the burden of proof is on the party seeking the waiver of immunity." (Footnote omitted.) *Douglas v. Dept. of Juv. Justice*, 349 Ga. App. 10, 10-11 (825 SE2d 395) (2019).

Generally speaking, "sovereign immunity extends to the state and all of its departments and agencies," Ga. Const. of 1983 Art. 1, Sec. II, Par. IX (e) -- including counties, see *Bd. of Commrs. of Glynn County v. Johnson*, 311 Ga. App. 867, 869 (1) (717

SE2d 272) (2011) -- and precludes suits for declaratory relief. See *Lathrop v. Deal*, 301

Ga. 408, 444 (IV) (801 SE2d 867) (2017). However,

> [i]n November of 2020, the people of Georgia . . . amended our Constitution to allow for a specific waiver of sovereign immunity. See Ga. L. 2020, Act 596, p. 917, § 1. This new waiver allows citizens to sue the State (and . . . to sue local governments) for declaratory relief. See Ga. Const. of 1983, Art. I, Sec. II, Para. V (b) [(1)] ("Paragraph V").

*State v. SASS Grp.*, 315 Ga. 893, 893 (885 SE2d 761) (2023). Paragraph V provides,

in relevant part, as follows:

> Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of . . . any county . . . outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective *acts* which occur on or after January 1, 2021.

(Emphasis supplied.) As recently explained by the Supreme Court of Georgia, the

word "acts" as used in Paragraph V should be understood in the ordinary sense,

which can mean "the doing of a thing" or "a thing done; [a] deed." (Citations

omitted.) *Starship Enterprises of Atlanta v. Gwinnett County*, 319 Ga. 293, 299 (903

SE2d 55) (2024).

Here, as the superior court correctly explained in its order, Fraser has failed to allege an act or the possibility of an act by the County occurring on or after January 1, 2021, with respect to the causeway or applicable roadways. According to Fraser's pleadings, the last relevant act by the County pertaining to the causeway and the roads dates to the 2009 corrected quitclaim deed. Indeed, as it stands now, the County no longer holds title to the disputed lands, and, consequently, is not contributing to any uncertainty concerning access to, or ownership of, the relevant tracts of land.[3] The true grievance here is not with current or on-going action taken by the County, but

---

[3] Fraser asserts that, pursuant to local ordinances, Glynn County has an "on-going legal duty to ensure that the public has access to county roads and that each day these roads are closed to the public constitutes a new violation that waives sovereign immunity." However, as the Supreme Court of Georgia recently recognized, Paragraph V waives sovereign immunity with respect to legal proceedings seeking declaratory relief *from acts*, i.e., the affirmative doing of things. See *Starship Enterprises of Atlanta v. Gwinnett County*, 319 Ga. 293, 299 (903 SE2d 55) (2024). It follows, then, that sovereign immunity is not waived to the extent that a lawsuit seeks to challenge *inaction* or to compel performance by a defendant. Indeed, such a conclusion is bolstered by the fact that "[t]he distinctive characteristic of a declaratory judgment is that the declaration stands by itself and does not seek execution or performance by the defendant." (Citation and punctuation omitted.) *Gelfand v. Gelfand*, 281 Ga. 40, 40 (635 SE2d 770) (2006). Moreover, Fraser has, in effect, pleaded herself out of court. Fraser's pleadings acknowledge, as they must, that the causeway and various roads have been abandoned or conveyed to the Sea Island Entities. While Fraser believes these acts are unlawful, Fraser cannot possibly introduce evidence of Glynn County's failure in this regard without first conclusively establishing that the causeway and roads are, in fact, public.

instead, with the alleged on-going privatization of Sea Island *by the Sea Island Entities*; indeed, neither the parties nor the dissent can pinpoint a current or prospective act by the County concerning the ownership of the causeway or various roadways other than speculating that County law enforcement may enforce Georgia trespass law.[4] In short, Fraser and Kilgore have failed to demonstrate a waiver of sovereign immunity. See *City of Atlanta v. MLK Properties*, 372 Ga. App. 210, 215-216 (2) (a) (904 SE2d 79) (2024) (no sovereign immunity waiver under Paragraph V where declaratory action sought relief from alleged wrongful acts having already occurred and was thus merely "attempting to enforce rights that had already accrued"). Compare *Starship Enterprises*, 319 Ga. at 301 (2) (b) (declaratory judgment action appropriate to challenge pre-2021 ordinance passed by Gwinnett County where the county had used the ordinance to withhold the business's occupational tax certificate and where the

---

[4] While the dissent opines that Fraser struggles to "engage vendors" because of the Sea Island entry fee, it is unclear how this is related to any current or prospective act by the County.

business had continued to curtail its business operations as a result).[5]

---

[5] The dissent has failed to address the fact that, in *Starship*, Gwinnett County was *continuing* to enforce a pre-2021 ordinance; indeed, Gwinnett County had relied on that ordinance to refuse to issue an occupational tax certificate to the store and, later, to obtain an injunction against the store. *Starship*, 319 Ga. at 295-296. Here, on the other hand, neither Fraser nor Kilgore have pleaded any such overt or threatened act *by the County*. In fact, the County -- the only party against whom Fraser and Kilgore have sought a declaratory judgment in this case -- does not even own the land about which Fraser and Kilgore complaint and, thus, cannot independently threaten Fraser with a trespass prosecution, see OCGA § 16-7-21 (b) (2). The dissent highlights this obvious legal flaw when recognizing that any threat of trespassing requires the intervention not of the County but of "*employees* of the private entities." Cf. *GeorgiaCarry.org v. Atlanta Botanical Garden*, 299 Ga. 26, 30 (1) (785 SE2d 874) (2016) (declaratory judgment action filed against lessee of land rather than government entity tasked with enforcing trespass laws). While the dissent points to "no parking" and "private property" signs, there is no indication in the pleadings that the County has ratified these signs, that these signs were -- as the dissent contends -- erected with "the support of the County government," or that the County is enforcing or threatening enforcement of the private property rights of the Sea Island Entities. It is simply not reasonable to conclude from the pleadings, as the dissent apparently has, that the County is somehow acting as a shadow agent to protect the property rights of a private entity. The dissent has failed to identify how Fraser or Kilgore are seeking "relief from contemporaneous enforcement of . . . unlawful government actions" *by the County* occurring *after* January 2021. Taken to its logical conclusion, the dissent would render superfluous the temporal restrictions of Paragraph V; according to the dissent, any right accruing before January 1, 2021, that the State could conceivably enforce by virtue of its criminal or civil enforcement power, would authorize a declaratory judgment action. This cannot be so, and, despite its urgent protestations to the contrary, the dissent's position has no basis in any language from the *Starship* decision.

Accordingly, the superior court correctly granted the County's motion to dismiss on the basis of sovereign immunity.[6]

(b) Alternatively, even if Fraser and Kilgore could demonstrate a valid waiver of sovereign immunity, they have nevertheless failed to plead an actual or justiciable controversy sufficient to support declaratory relief; consequently, the superior court may be affirmed under the right-for-any reason rule. See *Gardei v. Taylor*, 375 Ga. App. 402, 408 n.3 (916 SE2d 212) (2025).

As we have explained before,

[t]he Declaratory Judgment[s] Act ("the Act") authorizes courts to declare rights and other legal relations of any interested party in cases of actual controversy under OCGA § 9-4-2 (a) and in any civil case in which it appears to the court that the ends of justice require that the declaration should be made under OCGA § 9-4-2 (b). Under OCGA § 9-4-2 (a), the idea of an actual controversy is often described as standing to bring the suit, and subsection (b) of the Act broadens the scope of the Declaratory Judgment[s] Act beyond actual controversies to include justiciable controversies. Our Supreme Court has defined the term "justiciable controversies" as the existence of circumstances showing a necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged

---

[6] Our determination that Fraser's declaratory judgment action is barred by sovereign immunity and, in the alternative, lacks justiciability, renders moot Fraser's contention that the superior court erred in failing to enforce the Cain reverter.

rights and which if taken without direction might reasonably jeopardize his interest.

*Publix Super Mkt. v. Rockdale County*, 375 Ga. App. 94, 96-97 (913 SE2d 851)(2025).

Fraser and Kilgore first seek declarations that the County's purported transfer and abandonment of the causeway and various roads was ultra vires and void. However, it is well established that a declaratory judgment action is inappropriate where "a declaration of rights would not direct the plaintiff's future conduct" or where such action "involved only a determination of rights that had already accrued." *Cobb County v. Floam*, 319 Ga. 89 (901 SE2d 512) (2024). See also *Avery v. Paulding County Airport Authority*, 343 Ga. App. 832 (808 SE2d 15) (2017) (citizen tax payers could not use declaratory judgment action to "declare void an ultra vires act of the county"). Further, while Fraser complains that "no parking" and "private property" signs have been placed on various portions of the causeway -- and that Kilgore, as a nonresident of the island, is "at risk for criminal prosecution for trespass" if he were to access the causeway and roads -- there is no indication in her pleadings that *the County* erected the signs[7] or that there has been any actual threat of a trespass prosecution. "[M]ere speculation regarding the application of a criminal provision is

---

[7] Fraser actually avers that it was the Sea Island Entities who posted the signs.

insufficient to maintain a declaratory judgment action because the requisite justiciable controversy is absent." *GeorgiaCarry.org v. Atlanta Botanical Garden*, 299 Ga. 26, 30 (1) (785 SE2d 874) (2016). See also *Frances Wood Wilson Foundation v. Bell*, 233 Ga. 588, 589 (1) (157 SE2d 287) (1967); *Patterson v. State*, 242 Ga. App. 131, 131-132 (528 SE2d 884) (2000) (declaratory judgment action lacked justiciability where there had been no threatened enforcement of the challenged amplified-sound statute).

Finally, as to Fraser's claim seeking a declaration that the Cain reverter was triggered by the County's abandonment of the causeway, it is true that "disputes concerning ownership of or right of access to land are classic candidates for resolution via declaratory judgment." (Citation and punctuation omitted.) *Smith v. Jones*, 278 Ga. 661, 661 (1) (604 SE2d 187) (2004). However, a declaratory judgment action *also* requires "a party with an interest in the controversy adverse to that of the petitioner," *Sexual Offender Registration Review Bd. v. Berzett.* 301 Ga. 391, 393 (801 SE2d 821) (2017), that is so because "there can be no justiciable controversy unless there are *interested parties* asserting adverse claims upon a state of facts which have accrued." (Emphasis supplied.) *Fulton County. v. City of Atlanta*, 299 Ga. 676, 677 (791 SE2d 821) (2016). See also *Pangle v. Gossett*, 261 Ga. 307, 308 (404 SE2d 561) (1991) ("For

a controversy to justify the making of a declaration, it must include a right claimed by one party and denied by the other."). "And in order to show it is an 'interested party' under the Declaratory Judgment[s] Act, a party must show that his rights are in direct issue or jeopardy." (Citation and punctuation omitted.) *In Your Dreams Farm v. Raisin's Ranch*, 350 Ga. App. 398, 400 (829 SE2d 440) (2019).

Here, there can be no dispute that, as it currently stands, the County has abandoned the causeway land and that any current claim to that tract rests with the Sea Island Entities. Consequently, the County is not currently a party with an interest adverse to Fraser as to whether the Cain reverter has been triggered and, thus, there is no justiciable controversy with respect to that issue. Cf. *In Your Dreams Farm*, 350 Ga. App. at 400 (declaratory judgment action concerning easement improper where it failed to include actual owner of subservient estate).

(c) Fraser also argues that the superior court erred in dismissing her declaratory judgment action with prejudice, and we agree. Here, the superior court dismissed Fraser's declaratory judgment action on the basis that it was barred by sovereign immunity. "A motion to dismiss asserting sovereign immunity is based upon the trial court's lack of subject-matter jurisdiction, rather than the merits of the plaintiff's

claim." (Citation and punctuation omitted.) *Alred v. Georgia Pub. Defender Council*, 362 Ga. App. 465, 465-466 (869 SE2d 99) (2022). Because the superior court dismissed the action based on a lack of subject matter jurisdiction, the dismissal is without prejudice. Cf. *Publix Super Mkt. v. Rockdale County*, 375 Ga. App. 94, 99-100 (b) (913 SE2d 851) (2025). "Accordingly, we vacate the [superior] court's dismissal to the extent it was with prejudice, and remand the case to the trial court with instructions to clarify that the dismissal was without prejudice." Id.

## Case No. A25A1097

We turn now to Fraser's complaint purporting to seek relief under the Land Registration Law. The Sea Island Entities argue on appeal that Fraser is not entitled to pursue an action under the Land Registration Law and, consequently, that the motion to dismiss should have been granted. As explained below, we agree with the superior court in part as to Fraser's action concerning the causeway, and remand this matter for further proceedings; however, the superior court erred when it denied the Sea Island Entities motion to dismiss with respect to Fraser's action concerning the various roads.

2. We start by recognizing that this appeal requires us to delve into statute. As we have explained before,

> [i]n so doing, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. This Court looks to the text of the provision in question and its context within the larger legal framework to discern the intent of the legislature in enacting it. Where the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning generally ends.

(Citations and punctuation omitted.) *Symphony Med. v. FFD GA Holdings*, 370 Ga. App. 66, 69-70 (3) (893 SE2d 810) (2023). "The issue before us is purely legal and, thus, is reviewed de novo." Id. at 70 (3).

As then-Justice Nahmias explained in 2016, "[t]he little-known and now little-used Land Registration Law of 1917" is "Georgia's version of the 'Torrens Acts' that were adopted in many states a century ago."[8] *TDGA v. CBIRA*, 298 Ga. 510, 514 (783 SE2d 107) (2016) (Nahmias, J., concurring). Such proceedings are "in rem against the land," and any subsequent decree binds all persons who "are parties

---

[8] "Sir Richard Torrens, a customs officer in Australia, admired the system in use for registering title to ships, and devised a similar plan for land titles which has been given his name, and is now known generally as the Torrens System." 3 Daniel F. Hinkel, Pindar's Georgia Real Estate Law & Procedure § 24:2 (May 2025 Update)

to said proceedings, whether by name or under the general designation of 'whom it may concern.'" OCGA § 44-2-61. To be clear, title actions under the Land Registration Law "enable the owner of land to have his title settled and registered and not to force transfer of land from one party to another." 3 Daniel F. Hinkel, Pindar's Georgia Real Estate Law & Procedure § 24:5 (May 2025 Update). See also Arthur Gray Powell,[9] A Manual on Land Registration, p. 2 § 2 (1917) (recognizing that "modern land registration acts are not intended to affect title in its abstract sense otherwise than incidentally; they are intended to afford a simpler, more practical means of *evidencing title*") (emphasis supplied). Once title is fixed, the registrant may use that title as proof in subsequent proceedings for ejectment or similar relief. See Powell, p. 91 § 115.

An "[a]ction for registration of title shall be begun by a petition to the court by the person, persons, or corporation claiming, singly or collectively, to own or have the power of appointing or disposing of an estate in fee simple in any land[.]" OCGA §

---

[9] Georgia's Land Registration Law "was adopted in 1917 on the recommendation of a committee headed by Judge Arthur G. Powell," Hinkle, § 24:2, and the appellate courts of this State have relied on Judge Powell's treatise on the statutory scheme in numerous decisions. See, e.g. *Miller v. Turner*, 209 Ga. 255, 257 (71 SE2d 517) (1952); *Asbury v. McCall*, 202 Ga. 154 (1) (42 SE2d 370) (1947); *Crowell v. Akin*, 152 Ga. 126 (108 SE 791) (1921).

44-2-62. Alternatively, "[a]ny person possessing lands and claiming an interest or estate less than the fee therein may have his title to such lands established under this article." OCGA § 44-2-63. Reading these statutes together, they work in tandum; OCGA § 44-2-62 allows a petitioner who purports to hold title to land to initiate proceedings to have that land registered, while OCGA § 44-2-63 permits a petitioner who purports to possess the land to initiate proceedings to ensure that his or her interest in the land is established.

Here, the superior court concluded that Fraser was entitled to pursue her registration action with respect to the causeway land pursuant to OCGA § 44-2-62 and that she could use OCGA § 44-2-63 "to determine her rights to at least some of her remaining claims to access easements to [r]oads on Sea Island." We address each ruling in turn.[10]

### *OCGA § 44-2-62 and the Causeway Land*

---

[10] It does not appear that Fraser can use a single Land Registration action to pursue her attempt to register title to both the causeway land and the various roads given her disparate claims of purported "ownership" of those tracts. See OCGA § 44-2-65 ("Any number of separate parcels of land which are claimed by the petitioner *under the same general claim of title* and are located in the same county may be included in the same proceeding."). The parties have not addressed this issue, and we need not resolve this question at this juncture.

(a) The most natural reading of OCGA § 44-2-62, as applicable here, is that a petition for the registration of land may be initiated by the person or persons, singularly or collectively, claiming to own an estate in fee simple. To be sure, the superior court was correct when it concluded that Cain or Cain's heirs -- which includes Fraser given her acquisition of interest in the Cain reverter -- have a colorable claim to some or all the land underlying the causeway, whether in fee simple (i.e., if the Cain reverter has already been triggered[11]) or in fee simple determinable (i.e., the Cain reverter).[12] See, e.g., *Atlanta Dev. Auth. v. Clark Atlanta Univ.*, 298 Ga. 575, 581 (IV) (784 SE2d 353) (2016) ("[T]his limitation on the conveyed estate creates a defeasible fee or, more precisely, a fee simple determinable estate. Indeed, the hallmark of a fee simple determinable estate is that it provides for automatic reversion of the estate upon the occurrence of the limitation.").

---

[11] We question whether the County's abandonment of the causeway actually triggered the Cain reverter. Unlike the language conveying Twitty Park to the County -- which was "for the use and benefit of the public" -- the deed reflects that the causeway land was conveyed merely "for the purpose of a right of way for a road from St. Simons to [Sea] Island." For all that appears before this Court, the causeway remains in use as a road between the two islands, though its access is purportedly limited by the Sea Island Entities. However, the parties have not raised this issue, and we need not resolve it in this appeal.

[12] "[T]he reversionary interest created by a fee simple determinable is alienable." See *Flaum v. Middlebury, Inc.*, 246 Ga. 682, 682 (272 SE2d 695) (1980).

That said, the mere fact that Fraser and the Cain heirs have a colorable claim of ownership to some or all of the causeway land in fee does not end the inquiry into the propriety of Fraser's registration action pursuant to OCGA § 44-2-62 as to that land. Pursuant to that provision, such action may only be pursued by those "person [or] persons . . . claiming, *singly or collectively*, to own or have the power of . . . disposing of an estate in fee simple[.]" (Emphasis supplied.) Id. Here, Fraser initiated this action on her own, but she does not *singly* have the authority to own or dispose of the causeway land. Instead, there can be no dispute that, whatever colorable claim she and the Cain heirs have to the causeway land, it is as tenants in common, that is, the Cain heirs *collectively* claim to have an interest in the causeway land.[13] Consequently, Fraser may only proceed with a registration action under OCGA § 44-2-62 if all tenants in common join the application. See Powell, p. 30 § 25 ("If the fee be held by tenants in common, all must join in the application. An undivided interest is not the subject of initial registration.").

---

[13] "[A] tenancy in common is created wherever from any cause two or more persons are entitled to the simultaneous possession of any property." OCGA § 44-6-120.

20

Such a requirement comports with the well-established and well-understood nature of a tenancy in common, namely, that "[o]ne holding property with another person as tenants in common cannot convey or affect that person's interest without his or her consent." *Brock v. Yale Mortgage Corp.*, 287 Ga. 849, 851 (1) (700 SE2d 583) (2010). Indeed, a separate provision of the Land Registration Law reflects that registered land held by tenants in common cannot "be freed from registration *except upon the unanimous action of the owners of the entire fee.*" (Emphasis supplied.) OCGA § 44-2-144 (a). That said, Fraser's failure in this regard does not necessitate the immediate dismissal of her action as argued by the Sea Island Entities; on the other hand, the superior court was also incorrect in asserting that Fraser could continue with the registration litigation and use the process to "identify and serve potentially interested parties." Instead, in a "special statutory proceeding" such as this one -- even one involving its own "specific rules of practice and procedure" -- the "joinder of parties" is still governed by the Civil Practice Act. See OCGA § 9-11-81. Consequently, we remand this case to the superior court for further proceedings consistent with the applicable portions of the Civil Practice Act, which may include

OCGA § 9-11-19, to determine if and how Fraser may proceed in her action to register title to the causeway land pursuant to OCGA § 44-2-62.[14]

### OCGA § 44-2-63 and the Roads of Sea Island

(b) Looking now to OCGA § 44-2-63, "[a]ny person *possessing lands* and claiming an interest or estate less than the fee therein may have his title to such lands established under" the Land Registration Law. (Emphasis supplied.) While this section does not permit a petitioner to seek registration or a certificate of title, it allows a petitioner to secure assurances "as to their title or interest" in the land, "provided [that the petitioner] *is in possession of the land*." (Emphasis supplied.) Powell, p. 33-34 § 30. See also OCGA § 44-2-63.

Here, Fraser seeks to rely on OCGA § 44-2-63 to establish some interest in the various roads of Sea Island that were abandoned to the Sea Island Entities, asserting in her petition that she has an access easement to these roads either by virtue of being a Sea Island resident or because the "roads are held in public trust by the County for the benefit of the public." As Fraser acknowledges, "she must show that she has sufficient possession to be entitled to a decree under [OCGA § 44-2-63]." However,

---

[14] Fraser's co-tenants may not be the only parties that must be made part of her action to register title to the causeway land. See OCGA § 44-2-69.

nothing pleaded in Fraser's petition or articulated in her arguments before this Court reflect that she is, in fact, "possessing [the] lands" she seeks to establish an interest in. See Black's Law Dictionary (2nd ed. 1910) (defining "possess" as "[t]o occupy in person; to have in one's actual and physical control; to have the exclusive detention and control of; to own or be entitled to"). Indeed, it is generally understood that "'an easement is an interest in land owned *and possessed* by another.'" *WS CE Resort Owner v. Holland*, 315 Ga. 691, 694 (2) (a) (894 SE2d 282) (2023) (citing *Hollomon v. Bd. of Ed. of Stewart County*, 168 Ga. 359, 364 (147 SE2d 882) (1929)).[15] See also *United States Forest Svc. v. Cowpasture River Preservation Assn.*, 590 U. S. 604, 613-14 (A) (1) (140 SCt 1837, 207 LE2d 186) (2020) (recognizing that "easements grant only nonpossessory rights of use" and that an easement "merely burdens land that continues to be owned by another"); Hinkle § 8:1 (explaining that "an easement has been characterized as a non-possessory interest" and that it is "an incorporeal interest because it carries with it no appreciable degree of dominion over the land itself");

---

[15] Fraser points to *Yeomans v. Head*, 243 Ga. 266, 266 (253 SE2d 746) (1979), for the proposition that an easement can create "concurrent rights of possession," but we do not read *Yeomans* -- which has only been cited twice in nearly 50 years -- so broadly. Instead, consistent with long-standing, black-letter law, we understand *Yeomans* to say that, absent the grant of an exclusive easement, the grantor retains a concurrent *right of use* and retains possession of the land.

Restatement (First) of Property § 450 (1944) (recognizing that "[a]n easement is an interest in land in the possession of another" and noting that an easement is a "nonpossessory interest").

While Fraser points to Georgia adverse possession law and contends that there are various means to prove possession, see, e.g., OCGA §§ 44-5-165 and 166, she fails to articulate how she pleaded that her purported easements amount to actual possession,[16] constructive possession,[17] permissive possession,[18] an exclusive easement, or any other potential possessory interest in the various roads of Sea Island. Further, although it is true that the Land Registration Law permits those with lesser interests in land -- such as easements, liens, or other encumbrances -- to become a party to registration proceedings and to file objections and cross-petitions for the

---

[16] "Actual possession of lands may be evidenced by enclosure, cultivation, or any use and occupation of the lands which is so notorious as to attract the attention of every adverse claimant and so exclusive as to prevent actual occupation by another." OCGA § 44-5-165.

[17] "Constructive possession of lands exists where a person who has paper title to a tract of land is in actual possession of only a part of such tract." OCGA § 44-5-166.

[18] See *Proctor v. Heirs of Jernigan*, 273 Ga. 29, 29 (1) (538 SE2d 36) (2000) (possession of property with permission is permissive possession).

protection of those interests, see OCGA § 44-2-76, it does not follow that Fraser may rely on her purported easements to *initiate* such proceedings under OCGA § 44-2-63.

Because Fraser has failed to plead that she is "possessing land" that she seeks to establish an interest in pursuant to OCGA § 44-2-63, the superior court should have dismissed her petition to this extent, and, thus, we reverse the judgment of the superior court to the extent that it did not.[19]

*Judgment affirmed in part and vacated in part, and case remanded in Case No. A25A0994. Judgment affirmed in part and reversed in part, and case remanded in Case No. A25A1097. Hodges, J., concurs. McFadden, P. J., concurs in part and dissents in part.*

---

[19] We do not, as Fraser urges, read *Lankford v. Holton*, 187 Ga. 94 (200 SE 243) (1938), in a manner that undermines the plain language of the Land Registration Law and alters who may bring an action under that legislative scheme. Instead, we read that decision to stand for the general proposition that one who contests title must stand on the strength of his or her own title rather than the weakness of an adversary's claim to title. See, e.g., *Fed. Deposit Ins. Corp. v. Loudermilk*, 295 Ga. 579, 594 (3) (761 SE2d 332) (2014) (recognizing that the Supreme Court of Georgia "does not have the authority to rewrite statutes") (citation and punctuation omitted).

A25A0994. FRASER et al. v. GLYNN COUNTY.

A25A1097. SEA ISLAND COMPANY et al. v. FRASER.


MCFADDEN, Presiding Judge, concurring in part and dissenting in part.

The county's purported abandonment of the causeway and other roads and its purported transfer of them to the Sea Island Entities did take place in 2004 and 2009. The majority holds, in essence, that the pre-2021 abandonment and transfers are "the only relevant 'act[s]' about which [plaintiffs] could complain." See *Starship Enters. of Atlanta v. Gwinnett County*, 319 Ga. 293, 299 (2) (a) (903 SE2d 55) (2024). So for the majority, there is no waiver here of sovereign immunity. The majority also holds that the "declaratory judgment action lacks justiciability."

I disagree. The majority misreads *Starship* — which rejects the argument it adopts and holds that Paragraph V waives sovereign immunity for a prospective act of enforcement. The majority also misreads the Declaratory Judgment Act — which is very broad and requires only a right claimed by one party and denied by the other, as opposed to an abstract question. So I respectfully dissent from Division 1. I concur in the remainder of the opinion.

1. *Waiver of sovereign immunity*

Sovereign immunity is waived under Article I, Section II, Paragraph V of Georgia's Constitution for "past, current, and prospective acts which occur on or after January 1, 2021." Paragraph V provides, in relevant part, as follows:

> Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of . . . any county . . . outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

Ga. Const. of 1983, Art. I, Sec. 2, Par. V (b) (1).

In the recent case of *Starship*, 319 Ga. at 293, our Supreme Court addressed the meaning of the word "acts" for purposes of Paragraph V. In that case, the plaintiff sought to challenge via declaratory judgment and injunction a 2015 county ordinance regulating "Adult Establishments." 319 Ga. at 296 (1). The plaintiff invoked Paragraph V's waiver of sovereign immunity. Id. The trial court granted the County's motion to dismiss, holding, among other things, that the plaintiff's claims were barred by sovereign immunity. Id. at 297 (1). Our Supreme Court disagreed. Id. at 299 (2).

Our Supreme Court's holding in *Starship* is summarized in its subdivision headings: "(a) The trial court failed to recognize the breadth of the definition of 'act' in Paragraph V[,]" 219 Ga. at 299 (2) (a) (emphasis omitted), and "(b) The County's argument fails to acknowledge that Starship has alleged that it seeks relief from the County's prospective acts of enforcement, which will occur after January 1, 2021." Id. at 301 (2) (b) (emphasis omitted). Nevertheless, like the trial court in *Starship,* the majority fails to recognize the breadth of the definition of "act" in Paragraph V; and like the County in *Starship,* the majority fails to acknowledge that appellants have alleged that they seek relief from the County's prospective acts of enforcement.

*Starship* discusses at some length the meaning of "act" as used in Paragraph V. After consulting contemporaneous dictionaries, *Starship* holds that the definition of

"act" applicable under Paragraph V is "the doing of a thing." 319 Ga. at 299 (2) (a). So it concludes "that the trial court should have considered other 'things' the County has done or could do related to the [o]rdinance. . . ." Id. at 300 (2) (a) (citation and punctuation omitted). And consequently *Starship* holds: "the trial court erred by concluding that because the [o]rdinance was passed in 2015, Starship's lawsuit did not qualify for a waiver of sovereign immunity under Paragraph V." Id. (footnote omitted). It follows that the trial court here erred in holding that because the conveyance took place in 2004 and 2009, the appellants' lawsuit does not qualify for a waiver of sovereign immunity under Paragraph V.

In a footnote, *Starship* makes clear that its holding that an "act" had been sufficiently pled is *not* founded on "the mere passage of an ordinance," and in fact *Starship* pretermits "whether and when a party would have standing to challenge the mere passage of an ordinance itself, as opposed to, for example, the past or future enforcement of that ordinance against the party." *Starship*, 319 Ga. at 299 (2) (a) & n. 7. It necessarily follows that, under *Starship*, the acts relevant here to sovereign immunity waiver are not the pre-2021 conveyances but prospective acts of enforcement.

4

Along the causeway that provides the only overland access to the island, the Sea Island Entities have erected "Private Property" and "No Parking" signs. And on the causeway itself they have erected a gatehouse at which they charge access fees to some and deny access entirely to others.[1]

Those private entities could not have done those things without the County government's recognition of their claim that the causeway and the other roads at issue are those private entities' private property. Declaratory judgments may be entered to provide "relief from [a] County's prospective acts of enforcement, which will occur after January 1, 2021." *Starship,* 319 Ga. 301 (2) (b) (emphasis omitted).

The complaint alleges that the Sea Island Entities charge various fees for using the causeway, including a $175 annual fee for a personal vehicle, and will not allow the general public to pay a fee and access the island.

If appellant Kilgore attempts to travel to the island, he will be stopped by employees of the private entities. If he then persists, he will face the prospect of prosecution for criminal trespass.

---

[1] The complaint alleges that appellants are seeking declaratory and injunctive relief against the Sea Island Entities in a separate action. See Ga. Const. of 1983, Art. I, Sec. 2, Par. V (b) (2) (actions brought against a county pursuant to Paragraph V's waiver of sovereign immunity "shall be brought exclusively against such county").

Neither Kilgore nor Fraser can safely park near where those private entities have forbidden parking.

Appellant Fraser's ability to engage vendors is subject to the discretion of those private entities, who purportedly own the causeway, and her costs for use of those vendors may be increased because of the entry fee charged by the Sea Island Entities. Moreover she alleges that the Sea Island Entities give preferential access to its preferred vendors, limiting the times other vendors — including Fraser's landscaper — can access the island. More fundamentally it follows from the proposition that the Sea Island Entities own the causeway that they can charge Fraser any amount for use or even entirely bar her from using it --- and so from overland access to her home.

And, the appellants allege, the County is obligated to enforce the rights of the public to access the public roads and the public foreshore on Sea Island, an obligation that has continued after January 1, 2021.

It is true that the acts of enforcement in this case would be acts of the County supporting or permitting actions by the Sea Island Entities. Appellants brought separate actions against the county and the Sea Island Entities challenging the purported abandonment and transfers. That was necessary because subsection (b)(2) of Paragraph V provides,

> *Actions filed pursuant to this Paragraph against any county,* consolidated government, or municipality of the state or officer or employee thereof shall be brought exclusively against such county, consolidated government, or municipality and in the name of such county, consolidated government, or municipality. Actions filed pursuant to this Paragraph *naming as a defendant any individual, officer, or entity other than as expressly authorized under this Paragraph shall be dismissed.*

Ga. Const. of 1983, Art. I, Sec. 2, Par. V (b) (2) (emphasis added). See *State v. Sass Group*, 315 Ga. 893 (885 SE2d 761) (2023). But simply because the County acts in conjunction with private entities does not preclude declaratory relief for its acts "outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States." Ga. Const. of 1983, Art. I, Sec. 2, Par. V (b) (1).

Contrary to the majority, *Starship's* construction of Paragraph V does not enact unsound policy. If a statute or ordinance is unconstitutional or some other governmental action is ultra vires, there is no compelling policy justification for conditioning relief from contemporaneous enforcement of that unlawful governmental action on the date of the underlying unlawful action.

7

## 2. *Declaratory judgment*

As to justiciability under the Declaratory Judgment Act, OCGA § 9-4-1 et seq., the question is whether there is at issue "a right claimed by one party and denied by the other, and not merely a question as to the abstract meaning or validity of a statute." *Pangle v. Gossett*, 261 Ga. 307, 308 (1) (404 SE2d 561) (1991), quoting *Cook v. Sikes*, 210 Ga. 722, 726 (82 SE2d 641) (1954). The Act provides,

> In cases of actual controversy, the respective superior courts of this state and the Georgia State-wide Business Court shall have power, upon petition or other appropriate pleading, to *declare rights and other legal relations of any interested party* petitioning for such declaration, whether or not further relief is or could be prayed; and the declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

OCGA § 9-4-2 (a) (emphasis added). And,

> In addition to the cases specified in subsection (a) of this Code section, the respective superior courts of this state and the Georgia State-wide Business Court shall have power, upon petition or other appropriate pleading, to declare rights and other legal relations of any interested party petitioning for the declaration, *whether or not further relief is or could be prayed, in any civil case in which it appears to the court that the ends of justice require that the declaration should be made*; and the

8

> declaration shall have the force and effect of a final judgment or decree and be reviewable as such.

OCGA § 9-4-2 (b) (emphasis added).

The inclusion of subsection (b) makes the Georgia Declaratory Judgment Act "much broader in scope and more comprehensive in its jurisdiction of justiciable controversies than the declaratory judgment acts of many other states." *Pangle*, 261 Ga. at 308 (1) (punctuation omitted), citing *Calvary Indep. Baptist Church v. City of Rome*, 208 Ga. 312 (3) (66 SE2d 726) (1951).

Construing the pleadings most favorably to the Appellant[s, see *Georgiacarry.Org v. Atlanta Botanical Garden*, 299 Ga. 26, 28 (1) (785 SE2d 874) (2016) (citation and punctuation omitted), the appellants have adequately pled entitlement to a declaration of the "rights and other legal relations" of the parties. Declaratory relief is available to test the legal basis for governmental enforcement. "An action for declaratory judgment is an available remedy to test the validity and enforceability of a statute where an actual controversy exists with respect thereto." *Total Vending Serv. v. Gwinnett County*, 153 Ga. App. 109, 110 (264 SE2d 574) (1980). There is an "actual controversy" here because appellants maintain that the Sea Island Entities have no right to control access to the causeway and the other roads, while the

continued presence of the gatehouse and the "No Parking" and "Private Property" signs testifies to the County's willingness to enforce those purported rights.

"Appellant[s are] not required to violate a law about which there is an actual controversy concerning its enforceability and suffer a criminal prosecution, in order to test its validity." *Total Vending Serv.*, 153 Ga. App. at 111. Indeed, "a declaratory judgment action is not inappropriate merely because it touches upon a question of criminal law; in fact, such an action is an available remedy to test the validity and enforceability of a statute where an actual controversy exists with respect thereto." *Georgiacarry.Org*, 299 Ga. at 29 (1) (citation and punctuation omitted).

This case is very different from *Pangle*, 261 Ga. at 307; *Avery v. Paulding County Airport Auth.*, 343 Ga. App. 832 (808 SE2d 15) (2017); and *Patterson v. State*, 242 Ga. App. 131 (528 SE.2d 884) (2000). In *Pangle* there was no justiciable controversy; "both appellants and appellees" sought "a declaration that portions of" a particular statute "are unconstitutional" 261 Ga. at 308 (1). Similarly in *Avery*, a group of taxpayers as "'citizens of Georgia and residents and taxpayers of Paulding County,'" sought "to declare void an ultra vires act of the county" but did "not allege any uncertainty or insecurity as to their rights, status, or legal relations." 343 Ga. App. at 845 (2). Likewise in *Patterson* the appellant had brought an abstract challenge to a

statute of general application, but"had not been charged with violation of the statute nor had there been any showing of intent by authorities to take any action pursuant to the statute." 242 Ga. App. at 132.

Here by allowing the Sea Island Entities to operate the gatehouse and put up "Private Property" and "No Parking" signs, the County has shown its intent to enforce those private entities' purported property rights. Appellant Kilgore, who used to visit Sea Island and would like to be able to do so again, is not required to risk a criminal trespass prosecution in order to establish his claim.

Appellant Fraser's claim is a more difficult question because we have found no cases directly on point. But her claim is no less tangible. She claims an abridgement of her property rights by the private entities which — enabled by county government — control access to and from her home. Both appellants have demonstrated "a right claimed by one party and denied by the other, and not merely a question as to the abstract meaning or validity of a statute." *Pangle*, 261 Ga. at 308 (1) (citation and punctuation omitted). So the appellants have adequately stated a claim for declaratory judgment.